**STATE of Tennessee**

v.

**Howard Hawk WILLIS.**

Court of Criminal Appeals of Tennessee,
at Knoxville.

May 19, 2009 Session.

July 6, 2009.

Application for Permission to Appeal
Denied by Supreme Court
Nov. 23, 2009.

Gerald L. Gulley, Knoxville, Tennessee, for the appellant, Howard Hawk Willis.

Robert E. Cooper, Jr., Attorney General and Reporter; Michael E. Moore, Solicitor General; James E. Gaylord, Assistant Attorney General; Anthony Wade Clark, District Attorney General; and Dennis Brooks, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

JAMES CURWOOD WITT, JR., J., delivered the opinion of the court, in which JOSEPH M. TIPTON, P.J., and NORMA McGEE OGLE, J., joined.

In this capital murder case, the defendant, Howard Hawk Willis, brings an interlocutory appeal from the Washington County Criminal Court's order that the defendant both implicitly waived and forfeited his right to be represented by counsel on four counts of first degree murder [1] and three counts of abusing corpses. Because the record supports the order of the trial court, we affirm and remand the case for further proceedings.

The case comes to this court via Tennessee Rule of Appellate Procedure 9. *See* Tenn. R.App. P. 9. Following a series of

---

1. The four homicide counts allege, respectively, the premeditated murder and felony murder of each of two victims. As alleged in the October 2002 presentment, all offenses occurred in October 2002.

changes in counsel, most of which were prompted by the lawyers' motions to withdraw, the trial court ultimately held that the defendant had implicitly waived and forfeited his Sixth Amendment right to counsel.

The trial court initially appointed two lawyers to represent the indigent defendant. Lead counsel had practiced for 36 years and had handled approximately 20 capital cases. None of his clients had been placed on "death row." In the defendant's case, counsel filed numerous and extensive motions supported by legal memoranda. The motions included a motion to suppress upon which the trial court conducted a lengthy evidentiary hearing.

### First change of counsel

With the trial scheduled for April 11, 2005, the defendant, acting pro se, moved the court on March 14, 2005, to discharge his counsel and to appoint new counsel. On the same day, both attorneys moved to withdraw, alleging that the "attorney client relationship has deteriorated to such an extent that the attorneys should be permitted to withdraw" and that they had "encountered constant difficulty in obtaining the cooperation of the defendant in the preparation of the defense." Counsel further alleged:

The defendant has consistently refused to cooperate in providing requested information. He has insisted that the attorneys pursue factual investigations unrelated to this case; ... that they file unrelated lawsuits against individuals involved in this case. The defendant has insisted that the attorneys obtain evidence for him to review and then refused to review the evidence. He had demanded that he receive medical treatment and then refused to accept the treatment when it was provided. He has instructed defense investigators to

conduct investigations not specifically authorized by the attorneys and to withhold information from the attorneys. He has accused some associated with the defense investigation of working for the State. His conduct in regard to the efforts of the attorneys to prepare this case can be best described as "stonewalling."

On March 15, 2005, the trial court conducted an extensive hearing in which it reviewed each of the 55 complaints the defendant had leveled against his attorneys. The court expressed concern that lead counsel and co-counsel had worked on the case for one and one-half years. The court, after reviewing the defendant's complaints one by one, found them to be baseless and denied the defendant's motion to discharge counsel. At one point in the dialogue with the defendant, the trial judge remarked that ultimately the defendant may be "representing [himself] in this." The judge opined that the defendant had shown that he was "virtually impossible to communicate with."

On March 18, the court conducted further hearing on counsels' motions to withdraw. The judge stated that both lead counsel and co-counsel were very experienced, effective lawyers and indicated that "the whole problem [was] caused by [the defendant]." The judge further commented,

[I]t appears to the court that what he is doing—he's manipulative. He's looking—he's come within less than a month of a trial date, and he wanted things reheard [on the motion to suppress] he couldn't get heard. He managed to do that through the back door.... But, he is coming close to forfeiting his right to counsel. This court is not going to continue appointing counsel forever.... [T]he court finds in this case that [the defendant] has unreasonably requested

counsel to withdraw. At this point I don't think the court has any option but to allow [counsels'] motion to be relieved as counsel.

. . . .

[If] I were the parent of . . . either of [the victims], . . . I would think the system is absolutely crazy; that—that somebody in [the defendant's] shoes can manipulate the system; can refuse to acknowledge what the law is; refuse to assist counsel; refuse to answer questions; refuse to look at evidence; and refuse to acknowledge the controlling authority in the law and—result in—in manipulation of the system and his case being continued because of new lawyers. The problem with the situation is that the court finds that [counsel] just cannot under the requirements of the ethics of the profession represent him, even though, it is entirely his fault.

Thus, the trial court granted counsels' motion to withdraw and appointed the First District Public Defender to represent the defendant. The trial court then had the defendant sworn and asked him, "[D]o you understand that—that if you cause the conflict with your next set of lawyers that you may very well [be] representing yourself?" The defendant responded, "I do." The court then addressed a series of questions to the defendant as a means of assuring that he understood the implications of defending a capital murder case without representation of counsel.

The trial court canceled the April 11, 2005 trial setting.

### Second change of counsel

On April 4, 2005, the First District Public Defender moved to withdraw, citing conflicts of interests among members of the defendant's family and assistant public defenders. On April 5, 2005, the trial court granted this motion and appointed the Second District Public Defender to represent the defendant.

### Third change of counsel

On the same day, April 5, 2005, the Second District Public Defender moved the court to vacate the appointment order on the grounds that the trial court was not authorized to appoint "a district public defender outside of their specific district." The trial court agreed and appointed new lawyers to represent the defendant.

### Fourth change of counsel

On May 25, 2005, the newly appointed attorney moved to withdraw on the basis of serious illness in his immediate family. On May 31, 2005, the trial court granted the motion and appointed two other lawyers to serve as new counsel.

In August 2005, the trial court reset the trial for January 30, 2006.

### Fifth change of counsel

On September 28, 2005, the defendant's lead counsel moved to withdraw from the case on the ground that a conflict of interests had emerged when the defendant filed a complaint against counsel with the Board of Professional Responsibility ("BPR"). The court conducted a hearing on November 7, 2005. Lead counsel, who had practiced law for 21 years, stated that the defendant had claimed in a complaint to the BPR that counsel had not read the discovery materials in the case. Counsel characterized the defendant as "a blatant prevaricator" and added, "This is the type of behavior that [the defendant] persists in. You try to get information out of him you can't get information out of him." Co-counsel stated that the filing of the complaint with the BPR had brought the case to a "standstill." The trial judge commented, "[I]t appears that [the defendant]

is manipulating the system, but, it still doesn't leave the court any—any choice, at least, at this point. The motion to withdraw is granted."

The court then admonished the defendant that if he "create[d] another conflict then [he was] going to be representing [himself]." In its order granting the withdrawal motion, the trial court stated that "the attorney/client relationship between lead counsel ... and the [d]efendant ... has deteriorated to the point where lead counsel's zealous representation of the [d]efendant is extremely difficult if not impossible." The court appointed new lead counsel. The two lawyers then representing the defendant filed an extensive, supplemental battery of motions.

The trial remained scheduled for January 30, 2006, but at some point, the trial court reset the trial for September 19, 2006.

### Sixth change of counsel

On August 8, 2006, lead counsel moved to withdraw citing "irreconcilable conflict"; however, counsel apparently agreed to withdraw the motion in consideration of the defendant's dismissing a "complaint" he had filed against counsel. The trial court ordered a mental health evaluation of the defendant and continued the trial until October 24, 2006.

On October 9, 2006, the mental health evaluators in Kingsport filed with the trial court a letter in which they reported that they were "unable to properly evaluate [the defendant, who] did not cooperate with the evaluation process as he insisted on speaking to his attorney prior to the assessments." The evaluators expressed "no confidence that rescheduling this evaluation would yield a different outcome." On October 13, 2006, the trial court ordered that the defendant be sent to Middle Tennessee Mental Health Institute in Nashville (MTMHI). The October trial date was continued. In November and December 2006, MTMHI reported to the trial court that the defendant "is capable of adequately assisting in his defense in a court of law ... [,] that he does understand the charge pending [against] him ... [,] and [that he] is able to advise counsel and participate in his own defense." MTMHI noted that the defendant "was not willing to participate in some of the evaluation processes" although the "evaluation staff did have a great deal of observational data during the inpatient assessment." Essentially, MTMHI concluded that a defense of legal insanity was not supportable, that the defendant evinced no evidence of organic brain damage, and that he was of average intelligence.

In March 2007, the trial court set the case for trial on October 29, 2007.

### Seventh change of counsel

On March 19, 2007, both lead counsel and associate counsel moved to withdraw from the case, citing "irreconcilable conflicts" and the defendant's filing a complaint against both attorneys with the BPR. The defendant also moved the trial court to discharge his lawyers.

In the March 19, 2007 hearing, the trial court urged the defendant to have "a prayer meeting" with his attorneys. The judge directed comments to the defendant:

> I'm not going to go on appointing one lawyer, after another lawyer, after another lawyer. If I find that you're the one causing the conflict then you're stuck, and you're much more likely to get the death penalty if you try to represent yourself. It is an extremely stupid thing to do. But, we've been through the law on this before. If the court finds that appointment of additional

counsel is futile then that's where you are.

At this point, the court declined to rule on counsels' motion to withdraw and the defendant's motion to discharge counsel.

On October 8, 2007, both attorneys filed motions to withdraw indicating that the defendant had "fired" the attorneys and had, on October 4, "refused to speak with counsel [or] co-counsel." The record reflects no immediate ruling on these motions.

Although the trial began on October 29, 2007, the proceedings were suspended during jury selection when the jury pool was depleted.

On February 7, 2008, the defendant filed a motion to have his lawyers removed. On April 16, 2008, the defendant's lead counsel moved to withdraw alleging that "the relationship between the [d]efendant and [c]ounsel has deteriorated to such a degree that [counsel] can no longer act as a zealous advocate."

The trial court conducted a hearing on April 17, 2008. The defendant informed the court that he had "mailed out" lawsuits against both lead counsel and co-counsel to the United States District Court in Greeneville. The defendant said, "And since this is filed I really don't think there's much controversy. I don't think they can continue—continue under any circumstances."

The defendant was then sworn and testified that his lawyers were ineffective because they failed to file motions for "search warrants [and] for expert witnesses" and that they had failed to "file[ ] for various other investigative things to be done." The defendant called witnesses, including co-counsel on the case, to try to impugn the affidavit supporting a search warrant. This effort, aimed at showing

counsels' ineffectiveness, was, in a word, ineffectual.

Lead counsel explained that pursuing the motion to suppress sought by the defendant would have been "a terrible mistake" because it tied him "to a potential crime scene. We felt that—that the more we distanced him from that, that would be the better strategy." Counsel explained, however, that the defendant had ceased talking to counsel about issues in the case.

Addressing counsels' motions to withdraw, the trial court agreed that the defendant's filings against his attorneys both with the BPR and in the federal district court posed conflicts for counsels' continued representation of the defendant. The trial court granted counsels' motions to withdraw and held that the defendant had forfeited his right to counsel. The court stated,

> So, it appears he's waived his right to counsel because he's persistently demanding counsel of his choice and he refuses to cooperate. He refuses to talk to you all, refuses to communicate. He has refused to talk to the experts to evaluation, and—this is quite serious. [Denying the appointment of further counsel] should be done only when it gets to the point that appointing additional counsel would be futile.... [H]e knows how to put [the case] off again. He knows to file a complaint to the Board of Professional Responsibility about his lawyers, and he knows he can sue his lawyers. But, he—he hasn't shown the court that [the lawyers] have even begun to do anything other than what was in his best interest. So, the conclusion the court reaches ... is that [the defendant has] egregiously manipulated the constitutional right to counsel resulting in delay, disruption and it's prevented the orderly administration of justice.

The court appointed advisory counsel. On May 16, 2009, the trial court granted the defendant's motion for an interlocutory appeal. *See* Tenn. R.App. P. 9.

On June 27, 2008, this court appointed counsel to represent the defendant in his Rule 9 appeal.[2]

■ Guidance in the resolution of this interlocutory appeal is found in *State v. Carruthers,* 35 S.W.3d 516 (Tenn.2000). In *Carruthers,* a capital murder case, Carruthers' second lead counsel was allowed to withdraw because Carruthers had made personal threats against him to the point that counsel did not "feel comfortable or safe, personally safe, in continuing to represent Mr. Tony Carruthers." *Id.* at 535. The next battery of lawyers was relieved following their motions to withdraw and Carruthers' motion to have them discharged. *Id.* at 536–37. The subsequently appointed lead counsel then moved to withdraw, citing fears for the safety of himself and his staff engendered by Carruthers' threats. *Id.* at 538. At the hearing on the motions, the trial court had Carruthers removed from the courtroom after he "pointed" at his attorney "with some sort of threatening gesture." *Id.* at 539. The trial court referred to Carruthers' "ploy" of manipulating counsel and declined to relieve counsel, but a few days before the trial was scheduled to begin, counsel moved to withdraw on the basis of Carruthers' threats against the attorney and his daughter. *Id.* at 540. In response, the trial court allowed Carruthers a few days to decide whether to repair his relationship with lead counsel or to represent himself in the capital trial. *Id.* at 541. On the next day, Carruthers expressed his desire to discharge counsel. The trial court relieved counsel and declined to appoint another lawyer, despite Carruthers' claim that he was unqualified to represent himself. *Id.* at 543. The previously appointed co-counsel was instructed to remain on the case as "elbow" counsel. *Id.* at 544. Ultimately, Carruthers was tried, convicted, and sentenced to death.

Our supreme court affirmed Carruthers' convictions. After acknowledging that both "the United States and Tennessee Constitutions guarantee an indigent criminal defendant the right to assistance of appointed counsel at trial," *id.* at 546 (citing U.S. Const. amend. VI; Tenn. Const. art. I, § 9; *Martinez v. Court of Appeal of Cal., Fourth Appellate Dist.,* 528 U.S. 152, 120 S.Ct. 684, 686, 145 L.Ed.2d 597 (2000); *Gideon v. Wainwright,* 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963); *State v. Small,* 988 S.W.2d 671, 673 (Tenn.1999); *State v. Northington,* 667 S.W.2d 57, 60 (Tenn.1984); Tenn. R.Crim. P. 44(a)), the court pointed out that the "right of an accused to assistance of counsel, however, does not include the right to appointment of counsel of choice, or to special rapport, confidence, or even a meaningful relationship with appointed counsel," *id.* (citations omitted), and that the "essential aim of the Sixth Amendment is to guarantee an effective advocate, not counsel preferred by the defendant," *id.* (citing *Wheat v. United States,* 486 U.S. 153, 159, 108 S.Ct. 1692, 1697, 100 L.Ed.2d 140 (1988)).

The court stated that "[m]any courts ... have recognized that the right to counsel is not a license to abuse the dignity of the court or to frustrate orderly proceedings" and that "several courts have acknowledged that, like other constitutional rights, the right to counsel can be implicitly waived or forfeited if a defendant manipu-

---

2. This court compliments the defendant's appointed appellate counsel for his work on this appeal.

lates, abuses, or utilizes the right to delay or disrupt a trial." *Id.* at 546–47. The high court agreed that an implicit waiver, which "occurs when, after being warned by the court that counsel will be lost if dilatory, abusive, or uncooperative misconduct continues, a defendant persists in such behavior," differs from forfeiture of counsel, which "results regardless of the defendant's intent to relinquish the right and irrespective of the defendant's knowledge of the right." *Id.* at 548–49.

In *Carruthers,* our supreme court held as follows:

> The idea that the right to counsel may not be used to manipulate or toy with the judicial system applies equally to indigent and non-indigent defendants. Although an indigent criminal defendant has a constitutional right to appointed counsel, that right may not be used as a license to manipulate, delay, or disrupt a trial. Accordingly, we conclude that an indigent criminal defendant may implicitly waive or forfeit the right to counsel by utilizing that right to manipulate, delay, or disrupt trial proceedings. We also hold that the distinction between these two concepts is slight and that the record in this case supports a finding of both implicit waiver and forfeiture.

*Id.* at 549 (citation omitted). The supreme court concluded that the record supported a determination that Carruthers had implicitly waived counsel. It said, "We decline to hold that a trial court must provide extensive and detailed warnings when a defendant's conduct illustrates that he or she understands the right to counsel and is able to use it to manipulate the system." *Id.* The court held that Carruthers had implicitly waived counsel based upon the trial court's advising him that the "right to counsel will be lost if the misconduct persists and generally explain[ing] the risks associated with self-representation." *Id.*

Additionally, the record in *Carruthers* supported a finding that Carruthers had forfeited the right to counsel. The supreme court noted that Carruthers' " 'ploy' to delay the trial became increasingly apparent with each new set of attorneys" and that Carruthers' "conduct degenerated and his outrageous allegations and threats escalated markedly with each new set of attorneys." *Id.* at 550. The high court agreed with the trial court that "Carruthers was the author of his own predicament and sabotaged his relationship with each successive attorney with the obvious goal of delaying and disrupting the orderly trial of the case." *Id.* Under these circumstances, the supreme court said,

> the trial court was fully justified in concluding that Carruthers had forfeited his right to counsel. Indeed, in situations such as this one, a trial court has no other choice but to find that a defendant has forfeited the right to counsel; otherwise, an intelligent defendant "could theoretically go through tens of court-appointed attorneys and delay his trial for years."

*Id.* (quoting *State v. Cummings,* 199 Wis.2d 721, 546 N.W.2d 406, 419 (1996)). The supreme court reiterated that a finding of forfeiture of an indigent defendant's counsel in a capital case "is appropriate only where a defendant egregiously manipulates the constitutional right to counsel so as to delay, disrupt, or prevent the orderly administration of justice.... Persons charged with capital offenses should not be afforded greater latitude to manipulate and misuse valuable and treasured constitutional rights." *Id.*

In the present case, we hold that, based upon *Carruthers,* the record supports both a finding of the defendant's implicit waiver of the right to counsel and a finding of his forfeiture of the right as well.

The trial court found that the spate of conflicts with appointed counsel was the defendant's fault. It warned the defendant on multiple occasions that his persistence in engendering conflicts that led to changes in counsel would result in his representing himself in the case. When the trial court ordered the first change of counsel, it engaged the defendant in an extensive voir dire of his understanding of the imminence, difficulty, and risks of self-representation. Despite the trial court's warnings and explanations of the law, the defendant persisted in intentional conduct that prompted the disqualification of counsel. In these circumstances, the trial court was justified in holding that the defendant had implicitly waived his right to counsel.

██ Furthermore, the record supports a finding of forfeiture. The trial court found that the defendant used the tactic of suing his lawyers or filing complaints against them with the Board of Professional Responsibility as a means of coercing the court into discharging counsel and that the pattern was for the tactic to be employed as trial dates approached. The trial court gave the defendant ample opportunity to show via argument, documents, and testimony that he was justified in complaining about counsel's performance. Nevertheless, the defendant neither articulated nor established any basis for complaint against any of his attorneys. Additionally, the record shows that the defendant refused to communicate with counsel and to cooperate with mental health evaluators. His conduct was egregiously manipulative and abusive of the judicial process; it warrants a finding that he forfeited his right to counsel.

Accordingly, the order of the trial court is affirmed. The case is remanded for continued proceedings.