# IN THE SUPREME COURT OF TENNESSEE
# AT JACKSON
November 5, 2009 Session

## STATE OF TENNESSEE v. TOMMY HOLMES

**Appeal by Permission from the Court of Criminal Appeals**
**Criminal Court for Shelby County**
**No. 02-02082    James C. Beasley, Jr., Judge**

---

**No. W2008-00759-SC-R11-CD - Filed January 12, 2010**

---

We granted permission to appeal in this case to address whether the trial court erred in ruling that an indigent defendant forfeited his right to counsel at trial by telling his appointed lawyer, "I know how to get rid of you," and, at a subsequent meeting, physically assaulting his lawyer by striking the lawyer's eyeglasses with his finger. The defendant was tried by a jury pro se and convicted of aggravated rape. We hold that, under the facts and circumstances of this case, the trial court committed reversible error in ruling that the defendant had forfeited his right to appointed counsel at trial. While the defendant's physical attack on his lawyer was serious misconduct, it did not rise to the level of "extremely serious misconduct" sufficient to warrant an immediate forfeiture. State v. Carruthers, 35 S.W.3d 516, 548 (Tenn. 2000). Because the defendant was erroneously denied his fundamental constitutional right to counsel, we must reverse his conviction and remand this matter for appointment of new counsel and a new trial. The judgment of the Court of Criminal Appeals is reversed.

### Tenn. R. App. P. 11; Judgment of the Court of Criminal Appeals
### Reversed; Case Remanded to the Trial Court

CORNELIA A. CLARK, J., delivered the opinion of the Court, in which JANICE M. HOLDER, C.J., GARY R. WADE, WILLIAM C. KOCH, JR., and SHARON G. LEE, JJ., joined.

Claiborne H. Ferguson, Memphis, Tennessee, for the appellant, Tommy Holmes.

Robert E. Cooper, Jr., Attorney General & Reporter; Michael E. Moore, Solicitor General; John H. Bledsoe, Senior Counsel; David H. Findley, Senior Counsel; William L. Gibbons, District Attorney General; and Amy Weirich, Assistant District Attorney General, for the appellee, the State of Tennessee.

# OPINION

## Factual and Procedural Background[1]

The appellant, Tommy Holmes ("Defendant"), was indicted for attempted murder, aggravated rape, intimidation of a witness, and aggravated assault, and an assistant public defender ("Counsel") was appointed to represent him. In March 2003, shortly before one of Defendant's trials, an "impromptu hearing" was held with Defendant present. During this "hearing," Counsel sought permission to withdraw from representing Defendant on the basis of Defendant's behavior toward him. Counsel told the trial court,

> On two occasions, Your Honor, including this morning–the reason I had [the defendant] brought up was so I could visit with him up here. He has threatened physical violence in the past at our last meeting. Today he put hands on me and I had to leave. He punched me in the face with his finger, knocked my glasses off. And I don't believe that I can represent [the defendant]; so I'm asking the Court to relieve me.

State v. Holmes, No. W2006-00236-CCA-R3-CD, 2007 WL 1651876, at *3 (Tenn. Crim. App. June 7, 2007). The trial court permitted Counsel to withdraw without allowing anyone else to testify about the matter, concluding there was no need "to have a formal hearing in this regard." Id. The trial court then determined sua sponte that Defendant had forfeited his right to appointed counsel and informed Defendant that, unless he or his family hired a lawyer, Defendant would be representing himself at trial. Counsel turned over to Defendant the discovery materials he had received. The trial court denied Defendant's subsequent written motion for the appointment of counsel.

At a later hearing on pretrial motions, Defendant repeated his request for a lawyer and asserted that Counsel's report about the attack was false. The trial court again denied Defendant's request for a lawyer and again refused to conduct a hearing on the issue of what had occurred between Defendant and Counsel.

---

[1]This matter comes to us upon a second direct appeal, the first direct appeal having resulted in a remand for an evidentiary hearing. State v. Holmes, No. W2006-00236-CCA-R3-CD, 2007 WL 1651876, at *1 (Tenn. Crim. App. June 7, 2007). Because the record before us is limited to the hearing on remand, we have gleaned some of the factual and procedural background of this case from the Court of Criminal Appeals' decision on the first appeal.

Defendant proceeded pro se to his jury trial on the aggravated rape charge, but the trial court appointed elbow counsel to assist Defendant in conducting his defense.[2] The jury convicted Defendant of aggravated rape, a Class A felony.

On direct appeal, the Court of Criminal Appeals concluded that the trial court had not followed the correct procedures in determining that Defendant had forfeited his right to counsel. Accordingly, the intermediate appellate court remanded the matter to the trial court "for an evidentiary hearing as to whether [Defendant] forfeited his right to counsel." Id. at *10.

On remand, a different trial judge conducted the required hearing because the original trial judge had retired in the interim. At the hearing, Counsel testified that, as of March 2008, he had been a licensed attorney in Tennessee for twenty-two years. He joined the Public Defender's office in the spring of 2001 after having been in a general private practice. He was appointed to defend Defendant against charges including attempted murder, aggravated rape, intimidation of a witness, and aggravated assault. Defendant was in custody during the time Counsel represented him.

Counsel stated that he did not have any problems with Defendant "at first" but, at their penultimate meeting, Defendant told Counsel, "I know how to get rid of you." Defendant made this statement while his aggravated rape case was pending trial. Counsel's next meeting with Defendant occurred about two weeks before Defendant's trial date. Counsel testified about that meeting:

> We were–we were talking back in [an interview room in the courthouse] and [Defendant] asked me well do you believe I'm innocent. And I said it really doesn't matter what I believe. He jumped up, stood over me and said you're going to do what I tell you to do, pushed his finger at me and knocked my glasses, not all the way off but askew.

Counsel stated that he and Defendant were the only persons in the interview room. The door to the room was closed. Defendant had not been handcuffed during their meeting.

---

[2]Defendant's trial was held in September 2005.

Counsel testified that, after Defendant's actions, he "folded [his] books and left." Counsel reported the incident to the trial court "[i]mmediately." Counsel testified that he told the trial court "what happened and [the judge] brought [Defendant] out and essentially issued a ruling on it." When asked if Defendant's actions frightened him, Counsel responded, "Well, yeah, I guess so. I mean, it was astounding. I've never had that happen before or since." Counsel explained that he had represented "hundreds" of criminal defendants.

On cross-examination, Counsel acknowledged that, as he left his final meeting with Defendant, Defendant did not attempt to "come after" him or "take any swings" at him. Defendant "used an expletive" as Counsel was leaving but Counsel did not remember what it was. Counsel acknowledged that he did not report Defendant's verbal warning about getting "rid of" him. Counsel explained that this statement was made in "a threatening manner," but he did not know whether Defendant was referring to getting Counsel removed as his attorney, or something else. Counsel did not request that Defendant be handcuffed at their next (last) meeting.

With respect to the physical confrontation, Counsel explained that Defendant had not made contact with his face, but rather hit his glasses at the place where the earpiece is joined with the lens' frame. The contact with Counsel's glasses "hurt" and broke the frames. The glasses did not fall off of Counsel's face, however.

On questioning by the trial court, Counsel explained that, after he was permitted to withdraw from representing Defendant, elbow counsel was appointed to Defendant for his trial.[3]

Shelby County Sheriff's Deputy James C. Lafferty testified that he was the court bailiff on the day Defendant struck Counsel's glasses. He let Counsel in to and out of the interview room where Counsel met with Defendant. Deputy Lafferty testified that, as Counsel left the interview room, he appeared "kind of red, flustered-looking face, fixing his glasses saying let me out of here." Counsel did not appear to have any marks on his face, but appeared to be upset, nervous, and frustrated. Deputy Lafferty testified that Counsel told him that Defendant had "slapped" him. Deputy Lafferty did not witness the altercation, however.

---

[3]The lawyer representing Defendant on this appeal was appointed "elbow counsel" for Defendant's aggravated rape trial. This Court has clarified that an attorney who serves as elbow counsel "functions in a purely advisory role, without actively participating in the trial." State v. Small, 988 S.W.2d 671, 672 n.1 (Tenn. 1999). Thus, a defendant appointed such counsel "may consult counsel for guidance and advice, but otherwise handles the defense of the case on his or her own." Id. Upon its determination that a defendant has waived his right to counsel, a trial court may, in its discretion, appoint advisory (or elbow) counsel. Id. at 675.

Deputy Lafferty let Counsel into the courtroom and then returned to Defendant. Deputy Lafferty stated that, when he saw Defendant, Defendant "was sitting down in the witness room." Defendant was not yelling at Counsel and was "fine" when Deputy Lafferty took him to the "cell tank" and "secured him."

Deputy Lafferty asked Counsel if he wanted to charge Defendant. Counsel declined, saying that Defendant "was in too much deep water as it [was]." Accordingly, "[n]othing was ever written on" the incident.

Defendant was present at the hearing but did not testify.

After hearing the testimony, the trial court ruled as follows:

> The proof that I have before me is [Counsel] testified. [Counsel] has been a lawyer practicing in these courts for a number of years. He testified that he was assigned as a public defender and worked on a daily basis in Division 5 where [Defendant's] case was set. He testified that on a prior occasion some couple of weeks prior to this [Defendant] had made the statement to him in a threatening manner as [Counsel] put it, "I know how to get rid of you."

> Nothing else happened that particular day but he[,] [Counsel][,] testified that in his opinion, taken in light of everything else that was going on in Shelby County, more particularly the Tony Carruthers trial and the Robert Friedman trial, he took that as a serious threat from [Defendant] and it somewhat concerned him.[4]

> However, again to [Counsel's] credibility, he testified he did not request that [Defendant] be shackled or cuffed when he went back to talk to him two weeks before the trial was to begin. And that [Defendant] then became aggressive in the back, jumped up, said you're going to do what I tell you to

---

[4]Tony Carruthers was convicted in the spring of 1996 for three capital murders he committed in 1994. State v. Carruthers, 35 S.W.3d 516, 523-24, 545 (Tenn. 2000). Carruthers' trial was preceded by multiple changes of counsel and Carruthers' death threats against two of his appointed lawyers. Id. at 535, 542. The lawyer who represented Defendant in this case also represented Carruthers for several months and was co-counsel with one of the lawyers that Carruthers threatened; he was allowed to withdraw prior to Carruthers' trial in part because of repeated "[p]ersonal vilification" by Carruthers. Id. at 545. Memphis attorney Robert Friedman was shot and killed on June 21, 2002, by a disgruntled client he had represented in a divorce case. State v. Noel, No. W2005-00160-CCA-R3-CD, 2006 WL 2729487, at *1, *6 (Tenn. Crim. App. Sept. 25, 2006).

do and then poked him in the face with his finger and knocked his glasses askew, and [Counsel] then went out and reported that incident to [the trial judge].

[Counsel] has testified to those allegations. Officer Lafferty testified to [Counsel's] appearance and his attitude after he heard a commotion in the back. When he opened the door, [Counsel] came right past him and walked out and that he appeared to be flustered. His face was red and he was adjusting his glasses as he walked past. And that's the proof that I have.

And there's nothing to the contrary. There's nothing to counter that. I have nothing other than the testimony of [Counsel] as to what occurred in that room.

The Court finds as a result that [Defendant] had no right. There was no provocation. There was no indication of any animosity. There was no provocation or no indication of anything other than [Defendant] acting in an aggressive fashion and in an aggressive manner striking [Counsel].

I'm not arguing, nor am I stating for the record that he punched him with his fist or even that he slapped him with an open hand. He poked his finger in his face and hit his glasses and knocked his glasses off. In this Court's opinion no attorney should be subjected to that kind of activity by a defendant who they are representing, whether in the courtroom, in the jail holding tank or anywhere else. No attorney who has been asked and appointed to represent an indigent defendant should be subjected to threats, should be subjected to physical contact or physical abuse in any form or fashion by a defendant.

No attorney should be required to maintain and stay on a case under those circumstances so I find that it was very justifiable that [the trial court] relieved [Counsel] of representation at that particular time. But I'm also going to find that as a result of his physical action against [Counsel], that [Defendant] forfeited his right to be represented by appointed counsel and as a result was required to represent himself in the trial of these cases.

Defendant appealed the trial court's ruling. In a split decision, the majority of the Court of Criminal Appeals affirmed the trial court on the basis that Defendant's "physical assault against counsel, combined with his earlier verbal threat, qualifies as the sort of extremely serious misconduct sufficient to warrant the trial court's finding that [Defendant]

forfeited his right to the assistance of counsel." State v. Holmes, No. W2008-00759-CCA-R3-CD, 2009 WL 536930, at *5 (Tenn. Crim. App. Mar. 2, 2009). The dissenting judge on the panel acknowledged that "[o]f course a lawyer should not be subjected to abusive or offensive physical contact from a client," id. at *6 (Thomas, J., dissenting), but disagreed that Defendant's conduct "rose to the level of extremely serious misconduct [sufficient] to warrant forfeiture of his right to counsel." Id.

We granted Defendant's application for permission to appeal.

## Standard of Review

A trial court's determination after a hearing that a defendant has behaved in such a manner as to forfeit his constitutional right to legal counsel at trial is a mixed question of law and fact. See Abdur'Rahman v. Bredesen, 181 S.W.3d 292, 305 (Tenn. 2005) ("A constitutional claim that is resolved after an evidentiary hearing generally presents a mixed question of law and fact."). This Court reviews mixed questions of law and fact de novo, accompanied by a presumption that the trial court's findings of fact are correct.[5] Id.; see also United States v. Goldberg, 67 F.3d 1092, 1097 (3rd Cir. 1995) (reviewing de novo the defendant's claim that the trial court erroneously forced him to proceed to trial pro se following death threats to his appointed lawyer); Commonwealth v. Means, 907 N.E.2d 646, 655 (Mass. 2009) ("Factual findings related to the loss of the right to counsel, such as voluntary waiver, are entitled to substantial deference, but we review claims of violations of the right to counsel de novo, making an 'independent determination of the correctness of the judge's application of constitutional principle to the facts found.'") (quoting Commonwealth v. Currie, 448 N.E.2d 740, 745 (Mass. 1983)).

## Analysis

Both our federal and state constitutions guarantee to criminal defendants the right to legal counsel at trial. U. S. Const. Amend. VI; Tenn. Const. art. I, § 9; Gideon v. Wainwright, 372 U.S. 335, 339 (1963); State v. White, 114 S.W.3d 469, 475 (Tenn. 2003); Poindexter v. State, 191 S.W.2d 445, 445 (Tenn. 1946). The United States Supreme Court has long recognized that this right is one of the constitutional safeguards "deemed necessary

---

[5]The State asserts in its brief to this Court that we should review the trial court's ruling of forfeiture for an abuse of discretion, relying on State v. Huskey, 82 S.W.3d 297, 305 (Tenn. Crim. App. 2002), and State v. Rubio, 746 S.W.2d 732, 737 (Tenn. Crim. App. 1987). We disagree. Huskey dealt with the trial court's appointment of new counsel to represent the defendant on his retrial, to which the defendant objected. 82 S.W.3d at 302-04. Rubio dealt with the trial court's refusal to appoint new counsel to represent the defendant upon the defendant's complaints about his appointed lawyer. 746 S.W.2d at 732-35. In neither of these cases was the defendant deprived entirely of his constitutional right to counsel at trial.

to insure fundamental human rights of life and liberty." Johnson v. Zerbst, 304 U.S. 458, 462 (1938). Indeed, the high court has declared that "[t]he Sixth Amendment [right to counsel] stands as a constant admonition that if the constitutional safeguards it provides be lost, justice will not 'still be done.'" Id.; see also United States v. Cronic, 466 U.S. 648, 654 (1984) ("'Of all the rights that an accused person has, the right to be represented by counsel is by far the most pervasive for it affects his ability to assert any other rights he may have.'") (quoting Walter V. Schaefer, Federalism and State Criminal Procedure, 70 Harv. L. Rev. 1, 8 (1956)). Accordingly, indigent defendants are entitled to the appointment of counsel at no cost to themselves. Gideon, 372 U.S. at 339-40; State v. Carruthers, 35 S.W.3d 516, 546 (Tenn. 2000); see also Tenn. R. Crim. P. 44(a). Moreover, the wrongful deprivation of a criminal defendant's right to counsel is a structural error which so contaminates the proceeding that reversal is mandated. See United States v. Gonzalez-Lopez, 548 U.S. 140, 148-51 (2006); Penson v. Ohio, 488 U.S. 75, 88-89 (1988); Chapman v. California, 386 U.S. 18, 23 & n.8 (1967); State v. Rodriguez, 254 S.W.3d 361, 371 (Tenn. 2008).

Although the right to counsel at trial is fundamental, it is not without limits. A criminal defendant may be deemed to have forfeited this right when he or she engages in "extremely serious misconduct," Carruthers, 35 S.W.3d at 548 (citing Goldberg, 67 F.3d at 1102), or engages in an "egregious manipulation" of the right to counsel "so as to delay, disrupt, or prevent the orderly administration of justice." Id. at 550. Whether a defendant engages in some form of conduct that justifies a ruling of forfeiture may generally be determined only after an evidentiary hearing at which the defendant is present and permitted to testify.[6] Means, 907 N.E.2d at 662; King v. Superior Court, 132 Cal. Rptr. 2d 585, 598-99 (Cal. Ct. App. 2003). The State bears the burden of establishing that the defendant committed such actions as to justify a forfeiture. See Brewer v. Williams, 430 U.S. 387, 404 (1977). Factors relevant to the trial court's consideration include (1) whether the defendant has had more than one appointed counsel; (2) the stage of the proceedings, with forfeiture "rarely . . . applied to deny a defendant representation during trial"; (3) violence or threats of violence against appointed counsel; and (4) measures short of forfeiture have been or will be unavailing. Means, 907 N.E.2d at 659-661.

This Court has previously addressed the issue of forfeiture of counsel in only one case. In Carruthers, the defendant was facing three counts of first degree murder. His initially retained lawyer was permitted to withdraw because of a conflict of interest. New counsel Larry Nance was then appointed. When the State filed notice of its intent to seek the death penalty, an additional attorney was appointed. Several months later, the defendant filed a motion for substitution of counsel. Mr. Nance was subsequently permitted to withdraw

---

[6]An exception to this general rule may obtain where the defendant engages in the conduct at issue in open court. See, e.g., United States v. Leggett, 162 F.3d 237, 250 (3rd Cir. 1998).

"because of 'personal physical threats' made by [the defendant] that escalated to the point that Nance did not 'feel comfortable or safe, personally safe, in continuing to represent [the defendant].'" Carruthers, 35 S.W.3d at 535. The trial judge appointed a new lawyer, and later authorized a third lawyer to assist on the case as an investigator.

The three lawyers representing the defendant were subsequently permitted to withdraw, and the trial court appointed two new lawyers, Mr. Massey and Counsel. Several months later, Mr. Massey requested permission to withdraw on the grounds that the defendant was threatening him and that Mr. Massey "'fear[ed] for his safety and those around him.'" Id. at 538. The trial court denied Mr. Massey's motion, characterizing the defendant's actions as "part of an overall ploy on his part to delay the case forever until something happens that prevents it from being tried." Id. at 539. A few weeks later, Mr. Massey renewed his motion to withdraw, explaining to the trial court that he "had continued to receive [from the defendant] threatening letters at his home and was concerned for his daughter's safety because [the defendant] had described the car she drove." Id. at 540. The trial court again denied Mr. Massey's motion but informed the defendant that he had the choice between making things work with Mr. Massey and Counsel, or representing himself. Mr. Massey sought and obtained an interlocutory appeal, and the Court of Criminal Appeals allowed Mr. Massey to withdraw from the case. The trial court subsequently allowed Counsel to withdraw because the defendant "apparently had no confidence or trust in [him] and because [the defendant] was launching personal, verbal attacks upon" him. Id. at 545. The defendant eventually represented himself at trial over his repeated objections and requests for counsel. The jury convicted the defendant of three counts of first degree murder. Id. at 523.

On appeal, this Court recognized the fundamental state and federal constitutional rights to the assistance of counsel at trial. Id. at 546. We also recognized that "the right to counsel is not a license to abuse the dignity of the court or to frustrate orderly proceedings." Id. Thus, "the right to counsel can be implicitly waived or forfeited if a defendant manipulates, abuses, or utilizes the right to delay or disrupt a trial." Id. at 547.

In Carruthers, we distinguished between an implicit waiver of the right and a forfeiture of the right. On the one hand, we noted that,

> [o]rdinarily, waiver of the right to counsel must be voluntary, knowing, and intelligent. Typically, such a waiver occurs only after the trial judge advises a defendant of the dangers and disadvantages of self-representation and determines that the defendant "knows what he is doing and his choice is made with eyes open."

Id. at 546 (quoting Adams v. United States ex rel. McCann, 317 U.S. 269, 279 (1942)) (citations omitted). In contrast to this type of affirmative waiver, we concluded that "an *implicit* waiver may appropriately be found where, as here, the record reflects that the trial court advises the defendant [that] the right to counsel will be lost if the misconduct persists and generally explains the risks associated with self-representation." Id. at 549 (emphasis added). That is, compared to an affirmative waiver expressed through words, an implicit waiver is presumed from the defendant's conduct *after* he has been made aware that his continued misbehavior will result in the dangers and disadvantages of proceeding pro se.

On the other hand, we determined that "forfeiture results regardless of the defendant's intent to relinquish the right and irrespective of the defendant's knowledge of the right." Id. at 548. Accordingly, we recognized that a defendant may be found to have forfeited his right to counsel where he or she "engages in extremely serious misconduct . . . even though the defendant was not warned of the potential consequences of his or her actions or the risks associated with self-representation." Id.

As to the defendant in Carruthers, this Court upheld the trial court's refusal to appoint yet more lawyers after the withdrawal of the seventh attorney on the dual bases that the defendant had both implicitly waived his right to counsel and had forfeited the right. With respect to waiver, we held that the defendant "implicitly waived his right to counsel, because, after being warned by the trial court that he would lose his attorney if his misconduct continued, [the defendant] persisted in his misconduct." Id. at 549. With respect to forfeiture, we held as follows:

> [The defendant] repeatedly and unreasonably demanded that his appointed counsel withdraw and that new counsel be appointed. [The defendant's] demands escalated as his scheduled trial dates drew near. As the trial court recognized, the "ploy" to delay the trial became increasingly apparent with each new set of attorneys. In addition, [the defendant's] conduct degenerated and his outrageous allegations and threats escalated markedly with each new set of attorneys. As the trial court emphasized, [the defendant] was the author of his own predicament and sabotaged his relationship with each successive attorney with the obvious goal of delaying and disrupting the orderly trial of the case. Under these circumstances, the trial court was fully justified in concluding that [the defendant] had forfeited his right to counsel.

Id. at 550.[7]

---

[7]Similarly, in State v. Willis, No. E2008-01105-CCA-R9-D[sic]D, 2009 WL 1929161, at *1 (Tenn.
(continued...)

In Carruthers, we described the difference between an implicit waiver and a forfeiture as "slight," id. at 549, and observed that "many courts considering this issue do not distinguish between the two concepts and have used the terms implicit waiver and forfeiture interchangeably." Id. at 548. Under the facts and circumstances of the Carruthers case, our description was apt. Under the facts and circumstances of the instant case, however, the difference is much more pronounced. Applying the Carruthers distinction between implicit waiver and forfeiture to this case, we cannot conclude that Defendant implicitly waived his right to counsel. The record is clear that the trial court never warned him about his conduct or the consequences of failing to conform his conduct to acceptable norms. On the contrary, Defendant was brought before the trial court only on his original attorney's oral request to withdraw. The judge sua sponte and immediately refused to appoint new counsel, without warning and without even giving Defendant the opportunity to be heard on his objection. Defendant had no pattern of abusive behavior or conduct aimed at delaying the proceedings. Thus, Defendant's deprivation of counsel in this case is properly analyzed as a forfeiture. Means, 907 N.E.2d at 659 ("The sanction of forfeiture recognizes that a defendant may engage in misconduct that is so serious that it may justify the loss of his right to counsel even if he was not warned that his conduct may have that consequence.").

Carruthers was an extreme case, involving a significant pattern of verbal threats and manipulation of the system resulting in the ultimate withdrawal of seven lawyers and deliberate delay of the judicial process, all occasioned by the defendant. Carruthers does not, however, address the situation where, as here, there is a single incident involving a single attorney but including a physical assault and an ambiguous verbal threat. In determining whether such conduct is sufficient to amount to forfeiture of the fundamental constitutional right to counsel, we look to other courts that have considered assaultive conduct in a comparable context.

For instance, in United States v. Jennings, 855 F.Supp. 1427 (M.D. Pa. 1994), the defendant asked the district (trial) court to substitute his appointed counsel prior to jury selection. The district court denied the motion. "Whereupon, in open court, [the defendant] hit his counsel in the side of the head with his closed fist, causing counsel to reel to the courtroom floor. The blow caused swelling and redness on the cheek and just below the left

[7](...continued)
Crim. App. July 6, 2009), the Court of Criminal Appeals affirmed the trial court's ruling that the defendant had both implicitly waived and forfeited his right to counsel following seven changes of counsel. Relying on Carruthers, the Court of Criminal Appeals determined (1) that "[d]espite the trial court's warnings and explanations of the law, the defendant persisted in intentional conduct that prompted the disqualification of counsel," id. at *7, and (2) that the defendant's conduct "was egregiously manipulative and abusive of the judicial process." Id. This Court denied the defendant's application for permission to appeal. Willis, 2009 WL 1929161, perm. appeal denied (Tenn. Nov. 23, 2009).

ear of counsel." Id. at 1432-33. The district court allowed counsel to withdraw and refused to appoint substitute counsel. Shortly thereafter, the defendant "made threatening remarks, particularly against the Assistant United States Attorney, corrections officers, and his former counsel. These remarks, interspersed with foul language, included threats to cut the throat of former counsel and 'drink his blood,' to 'slaughter' corrections officers, and to murder the Assistant Untied States Attorney." Id. at 1433. The court noted that, "[s]ince [the defendant] possesses enormous physical strength, such threats were and are taken seriously by the court." Id.

In memorializing its decision that the defendant had forfeited his right to counsel at trial, the district court stated:

> In short, then, [the defendant's] conduct was, at an absolute minimum, unacceptable: it was a threat to the operation of the judicial system and the public confidence therein. The response taken by the court was a measured response to the conduct. It removed from [the defendant's] control that which he sought to abuse physically and misuse legally. And it is a means, perhaps the only means, of deterring repetition of the conduct by [the defendant] or others similarly situated. We hold that an indigent defendant who, without provocation or justification, physically assaults court-appointed counsel, thereby waives the right to appointed counsel.

Id. at 1445.

While acknowledging that deeming a defendant to have forfeited his right to counsel was "an extreme sanction," the district court observed that the defendant's conduct "was extreme and outrageous." Id. at 1444. The court reasoned that "[t]he sanction [of forfeiture] is appropriate under the circumstances and is commensurate with both the nature and extent of [the defendant's] conduct." Id. The defendant represented himself during his ensuing jury trial and was convicted. The United States Court of Appeals for the Third Circuit affirmed the defendant's convictions in an unpublished opinion. United States v. Jennings, 61 F.3d 897 (3d Cir. 1995) (unpublished table decision).

In United States v. Leggett, 162 F.3d 237 (3rd Cir. 1998), appointed counsel represented the defendant through trial. The jury convicted the defendant. At the sentencing hearing, the defendant

> entered the courtroom in the company of two United States Marshals. Upon seeing [his lawyer] in the courtroom, [the defendant] lunged at his attorney and punched him in the head, knocking him to the ground. While [the attorney]

lay, supine, [the defendant] straddled him and began to choke, scratch and spit on him. [After the defendant was removed from the courtroom, the attorney] was taken to a hospital by emergency medical personnel and treated for cuts, scratches and bruises.

Id. at 240. The trial court allowed the attorney to withdraw "and concluded that [the defendant] had forfeited his right to counsel for the sentencing hearing." Id. On appeal, the Court of Appeals affirmed the trial court's ruling, characterizing the defendant's conduct as "an unprovoked physical battery" that "qualifies as the sort of 'extremely serious misconduct' that amounts to the forfeiture of the right to counsel." Id. at 250 (quoting Goldberg, 67 F.3d at 1102). The appellate court noted that an evidentiary hearing was not necessary prior to a finding of forfeiture because the defendant had assaulted his lawyer "in full view" of the trial court. Id.

Significantly, the Court of Appeals in Leggett emphasized that "the forfeiture of counsel *at sentencing* does not deal as serious a blow to a defendant as would the forfeiture of counsel at the trial itself." Id. at 251 n.14 (emphasis added). The appellate court stated specifically that it "express[ed] no opinion as to whether [the defendant's] misconduct would have been sufficient to justify the forfeiture of counsel *during the trial*." Id. (emphasis added).

The United States Court of Appeals for the Second Circuit considered the effect of a criminal defendant's physical assault on his lawyer in the context of a habeas corpus proceeding in Gilchrist v. O'Keefe, 260 F.3d 87 (2d Cir. 2001). In Gilchrist, the state trial court allowed the defendant's lawyer to withdraw from representing the defendant during sentencing after the defendant "punched" his lawyer "in the ear and ruptured his eardrum during a pre-sentencing meeting in a courthouse holding cell." Id. at 90. The trial court refused to appoint new counsel for sentencing.

Under the "deferential" standard of review applicable to habeas corpus proceedings,[8] id. at 89, the federal appellate court affirmed the state trial court's ruling but issued a significant caveat:

Although, of course, under no circumstances do we condone a defendant's use of violence against his attorney, had this been a direct appeal from a federal

---

[8]A federal appellate court reviewing a state court judgment on habeas corpus review is limited to granting relief "with respect to any claim that was adjudicated on the merits in State court proceedings" to such claims that "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." Gilchrist, 260 F.3d at 93 (quoting 28 U.S.C. § 2254(d)(1)).

conviction we might well have agreed with [the defendant] that the constitutional interests protected by the right to counsel prohibit a finding that a defendant forfeits that right based on a single incident, where there were no warnings that a loss of counsel could result from such misbehavior, where there was no evidence that such action was taken to manipulate the court or delay proceedings, and where it was possible that other measures short of outright denial of counsel could have been taken to protect the safety of counsel.

Id. The court continued:

In response to incidents of this nature, trial courts have the discretion to take intermediate steps short of complete denial of counsel, and we think that courts should exercise that discretion wherever possible and consider whether the protection of counsel can be thoroughly assured by other means–for example, keeping a defendant in restraints when meeting with counsel and during courtroom proceedings.

Id. at 100.

State courts, too, have struggled with this issue. In King, 132 Cal. Rptr. 2d at 589-90, the California Court of Appeal considered a defendant who "head-butted" his first appointed lawyer and "grabbed" a subsequent appointed lawyer by the lawyer's coat, pulling the lawyer towards him, and telling the lawyer that he would "crush" the lawyer's head if the lawyer continued. The trial court ruled that this conduct resulted in the defendant forfeiting his right to counsel with respect to two new charges.

On review of a petition for writ of mandate regarding the denial of counsel, the Court of Appeal acknowledged that a defendant could be found to have forfeited his right to counsel "in certain circumstances based on misconduct, even without a prior warning," id. at 595, but cautioned that "trial courts should take intermediate steps to protect counsel before a complete denial of the right to counsel." Id. at 596. As to defendants who physically assault their lawyers, the appellate court stated that such defendants "can–and should–be physically restrained in future meetings with counsel" and that, "[i]f necessary, additional measures can be taken to protect counsel, such as noncontact meetings between defendant and counsel." Id. The court emphasized:

We recognize the utmost importance of the right to counsel and its role in assuring a fair trial and believe that most instances of misconduct by a defendant can be dealt with by measures less severe than forfeiture of counsel.

-14-

Where defendant engages in a course of misconduct towards counsel that is unprovoked and intended to cause counsel to withdraw and to delay or disrupt proceedings, and it reasonably appears that measures to curtail the misconduct are inadequate or futile, the right to counsel may be forfeited. Yet only in those rare cases of extremely serious misconduct towards counsel where it is apparent that any lesser measures will be patently inadequate to protect counsel may the right to counsel be forfeited in the first instance.

Id.

The appellate court suggested that, "[w]hile a warning is not always required before forfeiture of counsel can occur, in instances where the misconduct does not rise to the most serious level, a warning should be given. The warning will serve to alert defendant to the seriousness of his misconduct and perhaps forestall future misconduct." Id. The court also suggested that, in conjunction with issuing an explicit warning "that if the defendant persists in his misconduct he will forfeit the right to counsel and have to proceed pro se," the trial court have a colloquy with the defendant "in which the defendant is made aware of the dangers of self-representation." Id. at 597. In considering whether the trial court had appropriately ordered forfeiture in the case before it, the Court of Appeal determined that the hearing preceding the forfeiture was deficient, ordered the trial court to vacate its order finding that the defendant had forfeited counsel, ordered that counsel be appointed, and remanded for further proceedings. Id. at 601.

In State v. Montgomery, 530 S.E.2d 66 (N.C. Ct. App. 2000), the North Carolina Court of Appeals considered a defendant who was determined to be indigent and was appointed counsel. The defendant's family thereafter retained counsel, resulting in the withdrawal of appointed counsel. When retained counsel withdrew, the public defender was again appointed. A few months later, another privately-hired lawyer (Mr. Duncan) appeared on behalf of the defendant, again resulting in the withdrawal of appointed counsel. Duncan subsequently sought to withdraw on the day of trial on the basis that the defendant's girlfriend had retained him and that the defendant no longer desired his services. The trial court denied counsel's motion to withdraw, denied a motion for continuance, and informed the defendant "that he had a right to represent himself, to proceed with Mr. Duncan, or to retain another attorney, but that he was not entitled to the appointment of another attorney." Id. at 68. The defendant appeared with Duncan the next day, again objected to Duncan's representation, and disrupted the court with profanity. The trial court found the defendant in contempt and sentenced him to thirty days in jail.

The defendant appeared in court with Duncan a few days later and counsel again sought to withdraw. Counsel's motion was denied and the defendant again became disruptive, resulting in another sentence for contempt. On the day trial was scheduled to begin, the defendant was conferring with Duncan and threw water in Duncan's face. The defendant was again found in contempt and charged with simple assault. Duncan was then permitted to withdraw, and the trial court informed the defendant that he could hire another lawyer but that no new lawyer would be appointed to represent him. The defendant went to trial with "stand-by" counsel and was convicted. Id. at 68.

On appeal, the Court of Appeals upheld the forfeiture:

> In the present case, defendant was afforded ample opportunity over the course of fifteen months, to obtain counsel. He was twice appointed counsel as an indigent; twice he released his appointed counsel and retained private counsel. Apparently dissatisfied with Mr. Duncan, and upset at Mr. Duncan's inability to secure additional continuances of his trial, defendant was disruptive in the courtroom on two occasions, resulting in the trial being delayed. After being advised by [the trial court] that the case would not be further continued and that Mr. Duncan would not be permitted to withdraw, defendant refused to cooperate with Mr. Duncan and assaulted him, resulting in an additional month's delay in the trial. Such purposeful conduct and tactics to delay and frustrate the orderly processes of our trial courts simply cannot be condoned. Defendant, by his own conduct, forfeited his right to counsel and the trial court was not required to determine . . . that defendant had knowingly, understandingly, and voluntarily waived such right before requiring him to proceed *pro se*.

Id. at 69 (citation omitted).

In State v. Boykin, 478 S.E.2d 689 (S.C. Ct. App. 1996), the defendant was facing trial for armed robbery. The defendant's appointed counsel moved to withdraw prior to trial on the basis that the defendant had "verbally abused him and physically threatened him." Id. at 689. The trial court held a hearing at which counsel testified that he had been meeting with the defendant to discuss trial strategy. Counsel told the trial judge that the defendant

> became more and more hostile, and at that time, I told him I'd come back in another couple of days, and if he thought up any more that he wanted to use as [a] defense, to get that ready. And then as I was walking down the hallway to go back up to the front of the jail, he got more and more hostile. He came after me, starting cussing me real bad. And then we got in the waiting room out

there where the other two guards were, he started coming after me, and I was sidestepping around this way (indicating). I had my folders in my hand. And as I was sidestepping, one of the guards out there finally had to come over and bump him with one shoulder. I guess he didn't think he was really serious. And [the defendant] came around the guard, and the guard had to come around and grab him and get in front of him, and the other guard told me to go back down the hallway until they could get him back in his cell. And that took about two or three minutes. They finally got him back in his cell and they let me leave.

Id. at 689-90. The security guards' report confirmed the attorney's testimony. The defendant testified that he was unhappy with his lawyer but denied hitting or touching him. The trial court granted counsel's motion to withdraw and refused to appoint new trial counsel. The trial court later appointed elbow counsel for the defendant's jury trial. The jury convicted the defendant of two counts of armed robbery.

On appeal, the Court of Appeals held that the trial court had acted prematurely in depriving the defendant of counsel: "Although we do not condone [the defendant's] actions, we do not believe they were so severe as to permanently deprive him of appointed counsel," adding that the defendant's conduct "in the one event related by [his lawyer] was not sufficient to constitute forfeiture." Id. at 692. The Court of Appeals reversed the defendant's convictions and remanded for a new trial. Id.

In Commonwealth v. Babb, 625 N.E.2d 544 (Mass. 1994), appointed counsel had worked on the defendant's case for several months when the defendant filed a pro se motion for his lawyer's withdrawal. After ascertaining that the defendant did not wish to represent himself, the trial court treated the motion as one for the appointment of new counsel and denied it. The defendant tried this tactic twice more with the same result. The attorney subsequently filed a motion to withdraw on the basis that the defendant was refusing to assist in his defense and, additionally, had physically assaulted him. The assault consisted of the defendant shoving a table against the lawyer during their final meeting. The defendant's action resulted in the lawyer being knocked against a wall, whereupon the defendant "struck [his lawyer], bruising his cheek, and knocking off his glasses." Id. at 546.

After a hearing, the trial court determined that the defendant was "attempting to forestall his trial and disrupt the prosecution by forcing a last minute change of his court-appointed counsel," and concluded that, if the defendant were to be appointed new counsel, the defendant "would be attempting to force a withdrawal by that attorney before his case could be brought to trial." Id. The trial court ruled that the defendant had forfeited his right to court-appointed counsel. Id. at 545.

The trial judge "reported the propriety of his ruling" to the intermediate appellate court, and the Massachusetts Supreme Judicial Court transferred the matter to itself on its own motion. Id. Upon its review of the record, the high court held that the defendant "refused without good cause to proceed with [court-appointed counsel] and this constitutes abandonment, a term perhaps more consistent with the defendant's conduct than the judge's choice of the word 'forfeiture.'" Id. at 546. The court observed that the record lent "abundant support to the judge's findings that the defendant's complaints about [appointed counsel] were unwarranted and in some instances false." Id. The court affirmed the trial court's ruling. Id. at 547.

Though the individual facts vary widely, these cases make clear that a criminal defendant's constitutional right to the assistance of counsel is so fundamental, particularly at trial, that only the most egregious misbehavior will support a forfeiture of that right without warning and an opportunity to conform his or her conduct to an appropriate standard.[9] We agree with the Massachusetts Supreme Court that "[f]orfeiture is an extreme sanction in response to extreme conduct that imperils the integrity or safety of court proceedings," that it should be utilized only under "extraordinary circumstances," and that it should be a "last resort in response to the most grave and deliberate misconduct." Means, 907 N.E.2d at 658, 659, 660. We also agree with the United States Court of Appeals for the

---

[9]Our Court of Criminal Appeals dealt with a defendant's physical assault on his lawyer in State v. Small, No. W2007-01723-CCA-R3-CD, 2009 WL 331323 (Tenn. Crim. App. Feb. 10, 2009). In Small, the defendant was represented by appointed counsel during his jury trial for aggravated robbery. The jury convicted the defendant. Immediately thereafter, counsel was meeting with the defendant in "the lockup area." Id. at *1. The defendant was upset and so counsel informed the defendant that he would come back to see the defendant after the defendant had calmed down. As counsel turned to leave, the defendant struck him in the face twice before being subdued. Counsel returned to the courtroom, informed the judge of what had happened, and was immediately relieved from representation. The trial court refused to appoint new counsel for the defendant's sentencing hearing.

The Court of Criminal Appeals concluded that a "defendant's physical [attack] of his attorney is the kind of extreme and egregious behavior that may support a finding of forfeiture of counsel," id. at *4 (citing Leggett, 162 F.3d at 250), and held as follows:

The record establishes that Defendant struck counsel in the face from behind, bloodying counsel's lip. Counsel, who was caught completely off-guard, characterized the attack as a "sucker punch." We agree with the trial court and the State that Defendant's behavior was sufficiently egregious to warrant a forfeiture of the right to appointed counsel . . . . We conclude, therefore, that the trial court did not err in finding that Defendant forfeited his right to the assistance of appointed counsel at the post-trial phases of his case.

Id. This Court did not review the intermediate appellate court's decision on direct appeal, and we express no opinion on the correctness of the trial court's or the intermediate appellate court's conclusion of forfeiture in Small.

Second Circuit that a defendant should not be found to have forfeited (or implicitly waived) his right to counsel at trial on the basis of a single incident of physical violence unless the violence was extreme and (1) the defendant was previously warned that he could lose the right to counsel for such behavior; (2) there is evidence that the defendant engaged in the violence in order to manipulate the court or delay the proceedings; or (3) it is not possible to take other measures that will protect the safety of counsel. Gilchrist, 260 F.3d at 89.

In this case, the record indicates that Defendant became unhappy with his lawyer shortly before his trial was scheduled to begin and informed counsel that he knew how to get "rid" of counsel. The record does not reveal whether this threat referred to Counsel's representation or to Counsel's life. Defendant took no action to remove counsel from his case, and Counsel did not report this threat to the court. Nor did Counsel request that Defendant be restrained in any manner during their next meeting. At Defendant's next meeting with his lawyer, Defendant demanded to know whether Counsel believed he was innocent. When Counsel did not respond in the manner Defendant apparently wanted, Defendant became agitated, stood up, told Counsel "you're going to do what I tell you to do," and physically assaulted his lawyer by pushing his finger into the glasses that Counsel was wearing. The record does not indicate that Defendant took these actions to delay or disrupt the proceedings, and the record does not reflect that Defendant took any other actions aimed at manipulating the court or obstructing the orderly progression of his trial. There is no indication that Counsel was anything other than original counsel. Finally, there is no evidence that other, less onerous corrective measures, such as shackling Defendant during meetings with his lawyer, would not have been adequate to insure his lawyer's future safety.

As we indicated in Carruthers, an indigent criminal defendant should be deemed to have forfeited his right to counsel at trial only after he or she engages in "extremely serious misconduct." 35 S.W.3d at 548. We do not hesitate to conclude that *any* physical attack on counsel is serious misconduct, is not to be condoned, and warrants the lawyer's withdrawal from the case if requested. Whether a given physical attack constitutes *extremely* serious misconduct sufficient to warrant forfeiture of counsel at trial without prior warning, however, depends upon the particular facts and circumstances of the attack at issue.[10]

In this case, we hold that Defendant's behavior toward his lawyer does not justify the extreme sanction of total forfeiture of his right to counsel. We emphasize five aspects of the particular facts and circumstances of this case: (1) Defendant's behavior occurred prior to

---

[10]We do not imply by our decision in this case that a criminal defendant may not be found to have forfeited his right to counsel in the absence of a physical assault. A forfeiture (or an implicit waiver) may withstand constitutional scrutiny where, for instance, a defendant repeatedly threatens harm to his lawyer and/or his lawyer's family and it is apparent that the defendant has the ability to deliver on his threats.

his trial such that a forfeiture affected his right to counsel at trial rather than at a later proceeding such as sentencing; (2) there is no indication in the record that Defendant attacked his lawyer in order to obstruct, delay, or manipulate the proceedings; (3) Defendant's attack did not result in bodily injury to his lawyer; (4) Defendant's assault was limited to a single incident committed against his first lawyer; and (5) other means of protecting the lawyer's safety were available. We hold, therefore, that the trial court erred in ruling that Defendant forfeited his right to counsel at trial.

A trial court's erroneous ruling to deprive a defendant of his fundamental constitutional right to counsel is per se reversible error. Chapman, 386 U.S. at 23 & n.8 (1967); Rodriguez, 254 S.W.3d at 371. Accordingly, we must reverse Defendant's conviction and remand this matter for appointment of trial counsel and a new trial.

For the benefit of trial courts in future cases where a criminal defendant is alleged to have physically attacked his lawyer, we suggest that the following procedure be followed. Counsel should be allowed to withdraw if requested. Then, unless the attack occurred in full view of the court, the trial court should conduct promptly an evidentiary hearing, with the defendant present and permitted to testify, and make findings of fact on the basis of the proof presented. The trial court should determine, on the basis of the facts found, whether the defendant engaged in "extremely serious misconduct" sufficient to justify the extraordinary sanction of an immediate forfeiture (or implicit waiver) of counsel. In making this determination, the trial court should consider (a) the stage of the proceedings; (b) whether the lawyer attacked is initial counsel or is a successor to other lawyers allowed to withdraw due to problems with the defendant; (c) whether the defendant had previously been warned about the potential loss of counsel as a result of misbehavior; (d) whether the defendant engaged in the misconduct deliberately and with the aim of disrupting, delaying, or otherwise manipulating the proceedings; (e) the degree of violence involved and the seriousness of any injury inflicted; and (f) whether measures short of forfeiture will be adequate to protect counsel. If the trial court concludes that the defendant did not commit "extremely serious misconduct" so as to justify a forfeiture, the trial court should (1) appoint new counsel (assuming prior counsel withdrew); (2) inform the defendant of the potential consequences of future misbehavior and the risks of proceeding pro se; and (3) order such measures as are necessary to protect new counsel from future misbehavior by the defendant.

## CONCLUSION

The trial court and the Court of Criminal Appeals erred in determining that Defendant forfeited his fundamental constitutional right to counsel at trial as a result of his verbal threat and physical assault upon counsel. Because this error compromised the integrity of Defendant's trial, it is a structural constitutional error. Accordingly, we reverse Defendant's

conviction of aggravated rape and remand this matter to the trial court for appointment of new counsel and a new trial.

The costs of this cause are taxed to the State of Tennessee, for which execution may issue if necessary.

_____

CORNELIA A. CLARK, JUSTICE