# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT KNOXVILLE
July 26, 2016 Session

## STATE OF TENNESSEE v. MARTY E. HUGHES

**Appeal from the Criminal Court for Hawkins County**
No. 14CR128        Thomas J. Wright, Judge
_____

**No. E2015-01907-CCA-R3-CD – Filed December 23, 2016**
_____

The Defendant-Appellant, Marty E. Hughes, was convicted by a Hawkins County jury of two counts of aggravated assault. Although he was represented by appointed counsel at trial, Hughes signed a waiver of his right to appointed counsel prior to his sentencing hearing. He was subsequently sentenced as a Range III, persistent offender to concurrent sentences of ten and fifteen years for his convictions. Thereafter, Hughes filed a pro se notice of appeal before filing an untimely pro se motion for new trial. On appeal, Hughes argues: (1) the trial court violated his due process rights and committed plain error when it failed to expand the jury instruction on self-defense to include the rights of a person in a dwelling; (2) the evidence is insufficient to sustain his convictions for aggravated assault; (3) the trial court imposed an excessive sentence; and (4) his due process rights were violated when he proceeded to the sentencing hearing as a pro se defendant who was unaware and improperly advised of his right to file a motion for new trial. Because the record shows that Hughes did not knowingly, voluntarily, and intelligently waive his right to counsel prior to his sentencing hearing, we vacate the judgments of the trial court and remand the case for appointment of new counsel and a new sentencing hearing.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Criminal Court Reversed and Remanded**

CAMILLE R. MCMULLEN, J., delivered the opinion of the court, in which THOMAS T. WOODALL, P.J., and ROBERT H. MONTGOMERY, JR., J., joined.

Cameron L. Hyder, Elizabethton, Tennessee (on appeal) and Joseph O. McAfee, Greeneville, Tennessee (at trial) for the Defendant-Appellant, Marty E. Hughes.

Herbert H. Slatery, III, Attorney General and Reporter; Lacy E. Wilber, Senior Counsel; Dan E. Armstrong, District Attorney General; M. Ryan Blackwell and Akiah C. Highsmith, Assistant District Attorneys General, for the Appellee, State of Tennessee.

**OPINION**

The evidence at trial established that on March 2, 2014, Hughes approached Maquita Epps outside an apartment complex and said, "[Y]ou're . . . pretty. I want to get some of that p[----]." Epps immediately informed her mother, Michelle Torres, and her mother's boyfriend, Elmer Jarnigan, who were at a house nearby, of the statement Hughes made to her. Then Jarnigan, Torres, and Latasha and Josh Strange, Epps's sister and brother-in-law, found and confronted Hughes outside the apartment complex. Hughes denied any wrongdoing and ran to his truck, where he grabbed a chain and a metal pipe. Hughes then taunted Jarnigan and the others before withdrawing and walking toward an apartment unit in the complex.

A short time later, a physical altercation took place between a man and woman, who lived in this apartment unit, and Jarnigan and his group in the common area just outside the apartment. During this altercation, Jarnigan was hit in the back of the head, "blacked out," and fell down the stairs. Jarnigan was unable to confirm that Hughes was the individual who hit him because his back was turned at the time of his injury. After regaining consciousness, Jarnigan climbed the stairs and saw Hughes hit Mr. Strange[1] in the head with the pipe, which caused Mr. Strange to fall against the wall. An instant later, Jarnigan saw Hughes hit Mr. Strange a second time in the neck. Because a more detailed summary of the facts supporting Hughes's convictions is not relevant to our decision in this case, we now focus on the events that occurred following Hughes's trial.

On July 24, 2015, the jury found Hughes guilty of two counts of aggravated assault.

On August 14, 2015, and August 19, 2015, the trial court entered identical orders stating that while Hughes's sentencing hearing on the aggravated assault convictions initially had been set for July 27, 2015, it was continued because the presentence investigation report had not been completed. These orders also stated that on July 30, 2015, Hughes's appointed counsel filed a motion to withdraw, and on August 10, 2015, Hughes filed both a letter seeking to proceed pro se and a motion to dismiss the

---

[1] Because Latasha and Josh Strange share the same surname, we will refer to Josh Strange as "Mr. Strange" to avoid confusion. We intend no disrespect to other individuals in this opinion by referring to them by their surnames only.

indictment in his unrelated drug case for failure to prosecute.[2]  The trial court set Hughes's sentencing hearing and these motions to be heard on August 26, 2015.

At the August 26, 2015 hearing, appointed counsel announced that Hughes wished to relieve him of further representation and asked the trial court to allow him to withdraw. The court noted that Hughes had filed a request to proceed pro se, and Hughes confirmed that he no longer wished to have appointed counsel represent him.  At that point, the court and Hughes had the following exchange:

> The Court: And I know you're a smart guy and you know what you're doing but you understand that in most cases it's usually better to have an attorney that [has] actually, you know, been to law school and got a license to practice and actually would have more experience in the courtroom than you do.  You understand that[,] right?
>
> Hughes: Yes, Your Honor.  Completely.
>
> The Court: Okay.  And do you also understand that at the present time, you may not know this, but I don't know of any reason for [appointed counsel] not to represent you if you want an attorney.  So if you don't want a[n] attorney, from my perspective, you're going to be representing yourself; do you understand that?
>
> Hughes: Okay. . . .

Hughes said that because he believed appointed counsel had provided ineffective assistance at trial on his aggravated assault charges, he did "not feel comfortable with him proceeding further with any other action."  The trial court responded:

> Well, I mean, up to you, but I didn't see any problems with his performance, I thought he did a good job.  And at this[] time we're not trying that claim of ineffective assistance but the issue is whether or not you're going to represent yourself or have [appointed counsel]—you don't want him, I understand that, but what I'm telling you is I'm not appointing anybody else to represent you.

---

[2] We note that appointed counsel's motion to withdraw, Hughes's letter seeking to proceed pro se, and Hughes's motion to dismiss the indictment in his unrelated drug case were not included in the record on appeal.

Hughes replied that he was "consulting with other attorneys" and that he was "going to hire one." The court said that if he allowed appointed counsel to withdraw, he would have no further obligation to represent him, and Hughes said he understood. The court then explained that a sentencing hearing would have to occur before Hughes could file a motion for new trial or appeal his case. Hughes stated that he was going to hire an attorney for the sentencing hearing, and the trial court stated that he would need to file a motion for new trial within thirty days of the date the judgment was entered. At that point, the trial court asked the State if there was any other colloquy he needed to have before Hughes waived his right to counsel, and the State replied, "I don't believe so[.]" The court then informed Hughes of the following:

> So if you're going to hire you an attorney and you understand that I've told you that you can have an attorney and have the state pay for it based on your previous finding of indigency but that attorney is going to be [appointed counsel] at this point and you don't want him. So, in effect, discharging him is waiving your right to have an appointed attorney; are we clear on that?

Hughes replied affirmatively. The court then asked Hughes to sign a document entitled Waiver of Right to Have Appointed Counsel, which stated the following:

> The undersigned represents to the Court that he has been informed of the charges against him, the nature thereof, the statutory punishment therefore, and the right to appoint[ment] of counsel upon his representation to the Court that he is unable to employ counsel and the reasons therefore, all of which he fully understands. The undersigned now states to the Court that he does not desire the appointment of counsel, expressly waives the same and desires to appear in all respects in his own behalf, which he understands he has the right to do.

The trial court also signed this waiver.

The court next provided Hughes with a copy of the presentence investigation report, and Hughes and the court read the report before continuing with the sentencing hearing. After reviewing this report, the court noted that Hughes had a college degree in "geotechnical drilling and blueprint." The State argued that Hughes would be sentenced as a Range III, persistent offender because of his extensive criminal history, which included five prior felony convictions, and confirmed that it had certified copies of those convictions. The trial court proceeded with Hughes's sentencing hearing until Hughes asked for a continuance to hire an attorney in both his sentencing case and his unrelated

drug case because he was not adequately prepared. In order to give Hughes the opportunity to hire an attorney, the trial court continued the sentencing hearing and the motion hearing to September 8, 2015.

On August 28, 2015, Hughes filed a Petition for Injunctive Relief, alleging that his First Amendment right to proper access to the courts, his Sixth Amendment right to effective assistance of counsel, and his Fourteenth Amendment rights to due process and equal protection were violated when the trial court, on August 26, 2015, ordered him to proceed pro se until he could retain counsel. Hughes also claimed that he was "being denied visits, reasonable times to make calls, access to legal documents, files, records of Court, and proper means to [s]ubpoena very important witnesses and evidence to prepare [his] defense in the upcoming sentencing hearing[.]"

At the September 8, 2015 sentencing hearing, the trial court noted that Hughes appeared to be representing himself pro se and recalled that when the court last saw him, Hughes said he was going to hire an attorney. When the court asked if Hughes had decided not to retain counsel, Hughes replied, "No, sir. That's incorrect. I do have an attorney[,] but he has deferred sentencing. He said there is absolutely no time to prepare for him, that he considers whatever happens today is illegal anyway." The trial court replied that because there was nothing in the file to indicate that Hughes was currently represented by an attorney, Hughes would proceed pro se at the sentencing hearing. It added:

> As we discussed last time you were here, you have a right to [be] represented by an attorney and to have an attorney of your choice represent you if you can afford to hire one. If you can't afford to hire one, you get who we appoint for you[,] and we appointed [the private attorney who represented you at trial,] and you said you didn't want [that attorney] to represent you anymore[,] which meant that you were going to proceed pro se, and you said you understood that but that you were going to plan to hire an attorney. Now you say you've hired one[,] but he doesn't want to participate and says it's too little time to get ready for the sentencing.

The trial court then stated that "today is the day" for the sentencing hearing and that Hughes would have to proceed pro se, to which Hughes replied, "Yes, sir." The court then heard from the State regarding Hughes's sentencing range and the applicability of mitigating and enhancement factors. Before imposing the sentence, the court remarked, "No attorney has made an appearance in the case, no one has asked for a continuance of the matter, and so the [c]ourt's proceeding [with the sentencing hearing]." It then determined that Hughes was a Range III, persistent offender before sentencing

him to concurrent sentences of ten and fifteen years for his aggravated assault convictions.

The trial court went on to conduct a hearing on Hughes's unrelated charge for simple possession of a Schedule IV controlled substance. When the court noticed that Hughes's mother had entered the courtroom, it asked her whether Hughes was represented by an attorney on the drug charge, and Hughes mother replied, "We got [the attorney] for an appeal" of the aggravated assault convictions and explained that Hughes was not represented by an attorney in the drug case. When the trial court asked Hughes if he wanted the same appointed attorney who represented him at trial on the aggravated assault charges to represent him on his drug charge, Hughes responded in the negative and said he would proceed pro se in the drug case.

After dealing with several issues related to Hughes's drug case, the State requested a date for Hughes's motion for new trial on his two convictions for aggravated assault. The State said, "I want to be sure that Mr. Hughes is aware of the deadline in terms of filing his motion for new trial and his notice of appeal." The court stated, "I don't know if you want to file a motion for a new trial or if you just wanted to go with your appeal," and Hughes said, "Yes, that's what we're doing. Then the court declared, "But you've only got 30 days from the date I sign this judgment, which is going to be today, to file a motion for a new trial." At that point, the trial court said the thirty-day period to file the motion for new trial or notice of appeal would end on October 8, 2015, which the State confirmed. The court then asked, "If [Hughes] goes ahead and files a notice of appeal [, then] that deprives me of jurisdiction to hear a motion for new trial at that point, doesn't it?" The State replied, "I'm honestly not 100 percent sure, Your Honor."

When the trial court asked if Hughes had a notice of appeal ready to file in his case, Hughes responded, "Sir, like I say on that, it will be up to my attorney." Hughes then said, "[My attorney's] aware of everything." The court asked if Hughes had any questions about the thirty-day period "to get that done," and Hughes responded, "My attorney—I just, I don't really." Then the court stated, "Well, I'm telling you that if you don't have it done by October the 8th then you're going to be out, there ain't [sic] going to be no appeal[,]" to which Hughes replied that his attorney was "aware." When the court asked if Hughes personally was aware of this deadline, Hughes said, "Yeah, yeah, I'm aware." The trial court said it was important that Hughes understand the thirty-day deadline because no attorney had appeared on Hughes's behalf yet, and Hughes said, "Yeah, he's aware of everything. It's just when we talked about the sentencing[,] he said he could not prepare in the length of time that we had. And since it was pro se[,] he's very confident that we will prevail on appeal."

The State asked the court about obtaining a date for the motion for new trial "because a lot of times in the past . . . [other judges have] set the date and just informed the defendant that he has 30 days to file his motion and then if he doesn't, he doesn't." The court said Hughes had indicated he was only going to file a notice of appeal but recognized that he "could change [his] mind." Hughes stated, "I've elected . . . to let [my attorney] comment on that . . . [b]ecause he could have a schedule. . . . I don't want to speak for him and him not [be] here." Before adjourning, the court scheduled a tentative hearing on the motion for new trial for November 2, 2015 and said, "I'll send out an order and you can either have your attorney . . . contact my office to get that, or the clerk's office, or you can send it to them when you get your copy[,] and it will have the dates in it."

The judgments for Hughes's aggravated assault convictions were entered on September 8, 2015. The judgment form for one of the counts contained the following notation in the Special Conditions box: "Motion for new trial set for November 2, 2015 at 9:00 a.m. The trial court's docket sheet for the September 8, 2015 sentencing hearing also contained the following note: "[M]otion for new trial to be filed within 30 days or to file notice of appeal by October 8, 2015. MNT set Nov. 2, 2015 @ 9AM."

On September 18, 2015, Hughes filed a pro se notice of appeal. On November 23, 2015, he filed an untimely pro se motion for new trial, alleging that he had received ineffective assistance of counsel from his four prior attorneys, that the State had engaged in prosecutorial misconduct and malicious prosecution of him, and that various constitutional rights had been violated. On November 30, 2015, the trial court entered an order denying the motion for new trial on the basis that Hughes "filed a motion for [n]ew [t]rial . . . after his notice of appeal became effective." The trial court summarized the events preceding the filing of the motion for new trial before determining that the court was without jurisdiction to consider the motion:

> Mr. Hughes was sentenced on September 8, 2015[,] and a judgment was entered at that time. Because Mr. Hughes elected to proceed pro se, the [trial court] explained to him in detail about the time frame for filing a notice of appeal and/or for filing a motion for new trial. [The court] also set a date for a hearing on a potential motion for new trial, on the assumption that such a motion would be timely filed. No motion was filed prior to the expiration of the 30[-]day window provided by Tenn. R. Crim. [P]. 33(b). Because Mr. Hughes failed to timely file the Motion for New Trial[,] this court is without jurisdiction to consider this [m]otion. State v. Martin, 940 S.W.2d 567 (Tenn. 1997).

In addition, defendant Hughes also filed a Notice of Appeal . . . , which has now been accepted by the Tennessee Court of Criminal Appeals. . . . Because this case is on appeal[,] the [trial court] lacks jurisdiction to hear and consider any motions.

For all these reasons, defendant's Motion for New Trial [is] hereby DENIED.

## ANALYSIS

Although Hughes presents arguments regarding the self-defense instruction, the insufficiency of the evidence, and the excessiveness of his sentence, his last argument about proceeding pro se during the post-trial phase eclipses all of his other arguments. Specifically, Hughes argues that he was unaware of the procedural requirements for how to proceed post-trial and that his due process rights were violated when the trial court failed to advise him, as a pro se defendant, that he had thirty days from entry of the judgments to file a motion for new trial. See U.S. Const. amend. V; U.S. Const. amend. XIV; Tenn. Const. art. I, § 8. While he acknowledges that he signed a written waiver of his right to appointed counsel after appointed counsel withdrew, he asserts that this waiver stated only that he had to file a notice of appeal, rather than a motion for new trial, within thirty days of the date his judgments were entered. For these reasons, Hughes asks that his case be remanded to the trial court to allow him to file a "thorough and proper motion for new trial," which would "encompass[] all of the issues from trial that the defendant deems significant for review." We conclude that because the record shows Hughes did not knowingly, voluntarily, and intelligently waive his right to counsel prior to his sentencing hearing, we vacate the judgments of the trial court and remand the case for appointment of new counsel and a new sentencing hearing. Following this sentencing hearing, Hughes will have the opportunity to file a new motion for new trial and a new notice of appeal.

Initially, we recognize that a criminal defendant has the right to be represented by counsel or the right to represent himself and proceed pro se without the assistance of counsel. U.S. Const. amend. VI; Tenn. Const. art. I, § 9; State v. Hester, 324 S.W.3d 1, 29 (Tenn. 2010); State v. Holmes, 302 S.W.3d 831, 838 (Tenn. 2010); see Tenn. R. Crim. P. 44(a) ("Every indigent defendant is entitled to have assigned counsel in all matters necessary to the defense and at every stage of the proceedings, unless the defendant waives counsel."). The right of self-representation exists "'despite the fact that its exercise will almost surely result in detriment to both the defendant and the administration of justice.'" State v. Antonio McMiller, No. E2015-01597-CCA-R3-CD, 2016 WL 3947878, at *3 (Tenn. Crim. App. July 18, 2016) (quoting State v. Fritz, 585 P.2d 173 (Wash. Ct. App. 1978)), perm. app. filed (Tenn. July 29, 2016).

-8-

In order to exercise the right of self-representation, a defendant must waive his right to counsel, and this waiver may occur at any stage of the proceedings. Hester, 324 S.W.3d at 30. However, "[c]ourts should indulge every presumption against waiver of the right to counsel." Lovin v. State, 286 S.W.3d 275, 288 n.15 (Tenn. 2009) (citing Brewer v. Williams, 430 U.S. 387, 404 (1977); State v. Worrell, 660 S.E.2d 183, 185 (N.C. Ct. App. 2008); Williams v. State, 252 S.W.3d 353, 356 (Tex. Crim. App. 2008); State v. Vermillion, 51 P.3d 188, 192-93 (Wash. Ct. App. 2002)); see Holmes, 302 S.W.3d at 838 ("Of all the rights that an accused person has, the right to be represented by counsel is by far the most pervasive for it affects his ability to assert any other rights he may have." (citations and internal quotation marks omitted)).

In exercising the right of self-representation, the defendant must: (1) assert the right to proceed pro se in a timely manner; (2) clearly and unequivocally exercise this right; and (3) knowingly and intelligently waive his right to the assistance of counsel. Hester, 324 S.W.3d at 30-31 (citing State v. McCary, 119 S.W.3d 226, 256 (Tenn. Crim. App. 2003); State v. Herrod, 754 S.W.2d 627, 629-30 (Tenn. Crim. App. 1988); United States v. Bush, 404 F.3d 263, 271 (4th Cir. 2005); United States v. Mackovich, 209 F.3d 1227, 1236 (10th Cir. 2000)). Generally, the waiver of the right to counsel occurs "only after the trial judge advises a defendant of the dangers and disadvantages of self-representation and determines that the defendant 'knows what he is doing and his choice is made with eyes open.'" State v. Carruthers, 35 S.W.3d 516, 546 (Tenn. 2000) (quoting Adams v. United States ex rel. McCann, 317 U.S. 269, 279 (1942)).

In this case, prior to his sentencing hearing, Hughes signed a written waiver of his right to have appointed counsel when his second appointed attorney was allowed to withdraw. This court has recommended that before accepting a defendant's waiver of the right to counsel, the trial court should ask the litany of questions, or questions similar to those, found in 1 Bench Book for United States District Judges 1.02-2 to -5 (3d ed. 1986). Herrod, 754 S.W.2d at 630. These recommended questions have been restated in Smith v. State, 987 S.W.2d 871, 877-78 (Tenn. Crim. App. 1998), as an appendix to that opinion. This list of questions is "designed to emphasize the gravity of self-representation and determine the defendant's ability to proceed pro se." Antonio McMiller, 2016 WL 3947878, at *3. The trial court, prior to accepting a waiver of counsel, should also "advise the accused in open court of the right to the aid of counsel at every stage of the proceedings" and "determine whether there has been a competent and intelligent waiver of such right by inquiring into the background, experience, and conduct of the accused, and other appropriate matters." Tenn. R. Crim. P. 44(b)(1)(A)-(B); see T.C.A. § 8-14-106(b).

Before finding that a defendant has waived his right to counsel,

[a] judge must investigate as long and as thoroughly as the circumstances of the case before him demand. The fact that an accused may tell him that he is informed of his right to counsel and desires to waive this right does not automatically end the judge's responsibility. To be valid such waiver must be made with an apprehension of the nature of the charges, the statutory offenses included within them, the range of allowable punishments thereunder, possible defenses to the charges and circumstances in mitigation thereof, and all other facts essential to a broad understanding of the whole matter. A judge can make certain that an accused's professed waiver of counsel is understandingly and wisely made only from a penetrating and comprehensive examination of all the circumstances under which such a plea is tendered.

State v. Northington, 667 S.W.2d 57, 60 (Tenn. 1984) (quoting Von Moltke v. Gillies, 332 U.S. 708, 723-24 (1948)). The trial court's responsibility to conduct this comprehensive examination exists even when the defendant chooses to waive his right to counsel post-trial. State v. Gillespie, 898 S.W.2d 738, 741 (Tenn. Crim. App. 1994). The waiver of the right to counsel must be in writing and included in the record. Tenn. R. Crim. P. 44(b)(2), (3). The issue of whether a defendant has exercised his right of self-representation and has simultaneously waived his right to counsel is a mixed question of law and fact that this court reviews de novo, accompanied by a presumption that the trial court's factual findings are correct. Hester, 324 S.W.3d at 29. However, the erroneous deprivation of counsel is per se reversible error. Holmes, 302 S.W.3d at 848 (citing Chapman v. California, 386 U.S. 18, 23 & n.8 (1967); State v. Rodriguez, 254 S.W.3d 361, 371 (Tenn. 2008)); see United States v. Gonzalez-Lopez, 548 U.S. 140, 148-51 (2006); Penson v. Ohio, 488 U.S. 75, 88-89 (1988).

In general, any waiver of the right to counsel must be knowing, voluntary, and intelligent. Carruthers, 35 S.W.3d at 546 (citing Johnson v. Zerbst, 304 U.S. 458, 464-65 (1938); State v. Small, 988 S.W.2d 671, 673 (Tenn. 1999)). However, "the right to counsel is not a license to abuse the dignity of the courts or to frustrate orderly proceedings." Id. at 546 (footnote omitted). The Tennessee Supreme Court has recognized that "like other constitutional rights, the right to counsel can be implicitly waived or forfeited if a defendant manipulates, abuses, or utilizes the right to delay or disrupt a trial." Id. at 547 (internal footnote and citations omitted). Implicit waiver of the right to counsel may be found if "the record reflects that the trial court advises the defendant the right to counsel will be lost if the misconduct persists and generally explains the risks associated with self-representation." Id. at 549 (citation omitted); see Holmes, 302 S.W.3d at 840 ("[C]ompared to an affirmative waiver expressed through words, an implicit waiver is presumed from the defendant's conduct after he has been made aware that his continued misbehavior will result in the dangers and disadvantages

of proceeding pro se."). With implied waiver, there is no requirement that the trial court "provide extensive and detailed warnings when a defendant's conduct illustrates that he or she understands the right to counsel and is able to use it to manipulate the system." Carruthers, 35 S.W.3d at 549. On the other hand, forfeiture of the right to counsel may be found when "a defendant engaged in extremely serious misconduct . . . even though the defendant was not warned of the potential consequences of his or her actions or the risks associated with self-representation." Id. at 548 (citations omitted).

After carefully assessing the record in this case, we conclude that Hughes did not knowingly, voluntarily, and intelligently waive his right to the assistance of counsel. See Hester, 324 S.W.3d at 30-31; Carruthers, 35 S.W.3d at 546. The record shows that Hughes's first attorney, who was retained, was allowed to withdraw when he appeared in court late on Hughes's behalf, which resulted in the general sessions court issuing an arrest warrant for Hughes's failure to appear. Apparently, this first attorney also had a conflict of interest because he was a tenant of the apartments complex where the aggravated assault offenses occurred, and Hughes filed a lawsuit against the owners of the apartment complex in federal court.

Hughes's second attorney, an assistant public defender, was allowed to withdraw after Hughes filed a complaint against him with the Board of Professional Responsibility and named the district public defender as a potential witness in a civil rights lawsuit. Hughes's third attorney, an appointed private attorney, was allowed to withdraw because of "a substantial breakdown in communication" with Hughes. Hughes's fourth attorney, also an appointed private attorney, represented Hughes throughout trial on the aggravated assault charges but was allowed to withdraw prior to Hughes's sentencing hearing. Hughes claimed this fourth attorney provided ineffective assistance at trial, although the trial court said it was unaware of any deficiencies in counsel's performance. The court ultimately allowed this fourth attorney to withdraw, although the record does not include any facts showing that withdrawal of counsel was warranted. Given the circumstances surrounding this succession of attorneys, Hughes must have tried the patience of the trial court.

It is important to note that the initial appellate record did not contain the transcript from the hearing regarding Hughes's waiver of the right to appointed counsel or the withdrawal of his last attorney. During oral argument in this case, appellate counsel stated that although he had requested the transcript from this hearing, he was told by the clerk's offices in the relevant counties that it did not exist. On November 2, 2016, in an effort to discern what happened regarding Hughes's waiver, this court entered an order on its own motion directing the trial clerk to supplement the record with the transcript from the motion hearing regarding Hughes's waiver of counsel and any exhibits made at the hearing, including the letter from Hughes voicing his desire to proceed pro se. When the

-11-

supplemental record was transmitted on November 22, 2016, it included the August 14, 2015 and August 19, 2015 orders, which were identical, the August 26, 2015 written waiver that was included in the original appellate record, and the transcript from the August 26, 2015 hearing. Unfortunately, neither the initial record nor the supplemental record revealed that the trial court asked Hughes the recommended Bench Book questions, or similar questions, that emphasized the risks of self-representation and determined his ability to proceed pro se. See Antonio McMiller, 2016 WL 3947878, at *3. Specifically, the trial court did not "determine whether there [was] a competent and intelligent waiver of such right by inquiring into the background, experience, and conduct of the accused, and other appropriate matters." Tenn. R. Crim. P. 44(b)(1)(A)-(B). For these reasons, we must conclude that Hughes's written waiver of his right to appointed counsel was not knowing, voluntary, or intelligent. Furthermore, because the record does not show that the trial court warned Hughes that any further misconduct would place his right to counsel in jeopardy and does not show that Hughes's conduct was extremely serious, we must conclude that Hughes did not implicitly waive or forfeit his right to counsel. See Carruthers, 35 S.W.3d at 548-49. After carefully assessing this record, we believe the trial court had two options if it determined after a comprehensive evaluation that Hughes was not competent to proceed pro se. First, it could have refused to allow appointed counsel to withdraw. Second, it could have detailed Hughes's misconduct, if such misconduct in fact occurred, appointed new counsel, advised Hughes of the risks of self-representation, and warned him that any future misconduct would result in an implicit waiver of the right to counsel. Either of these options would have been a better alternative than having Hughes proceed pro se and most likely would have precluded any later problems regarding the filing of a timely motion for new trial and notice of appeal.

Therefore, in light of the record in this case, we vacate Hughes's sentence and remand the case for appointment of new counsel and a new sentencing hearing. Upon entry of the new judgments, Hughes may file a timely motion for new trial, and any appeal shall proceed in accordance with the Rules of Appellate Procedure. Cf. State v. Michael Small, No. W2003-02014-CCA-R3-CD, 2006 WL 3327845, at *3 (Tenn. Crim. App. Nov. 15, 2006) (remanding the case for evidentiary hearing and holding that if the trial court determined that the defendant's right to counsel was violated, then it would be required to vacate the judgment of conviction and sentence, appoint counsel for the defendant, and conduct a new sentencing hearing, after which the defendant would have an opportunity to file a timely motion for new trial and appeal).

In appointing counsel on remand, the trial court shall inform Hughes that, barring unforeseen circumstances, this attorney will represent him to the conclusion of this case. If the trial court finds that Hughes engaged in misconduct regarding his other attorneys prior to the appointment of counsel, it shall detail Hughes's misconduct on the record, advise him of the risks of self-representation, and warn him that any further misconduct

-12-

regarding this newly appointed attorney will result in an implied waiver of appointed counsel.  The court shall also inform Hughes that he will forfeit the right to counsel if he engages in "'extremely serious misconduct' . . . or engages in an 'egregious manipulation' of the right to counsel 'so as to delay, disrupt, or prevent the orderly administration of justice.'"  Holmes, 302 S.W.3d at 838 (quoting Carruthers, 35 S.W.3d at 548, 550).  The trial court shall tell Hughes that appointed counsel, and not Hughes, has the authority to make tactical decisions regarding the means of the representation and to determine the issues raised on appeal.  See Tenn. Sup. Ct. R. 8, RPC 1.2 (allocation of authority between client and attorney), 3.1 (meritorious claims and contentions); Felts v. State, 354 S.W.3d 266, 283 (Tenn. 2011) (This court will not second-guess the tactical decisions made by trial counsel when those decisions were informed and based upon adequate preparation.); Porterfield v. State, 897 S.W.2d 672, 678 (Tenn. 1995) ("Generally, the determination of the issues to present on appeal addresses itself to the professional judgment and sound discretion of appellate counsel.") (citation omitted).  If Hughes again asserts his right to self-representation following remand, the trial court shall follow the procedures set out in this opinion before determining whether Hughes is competent to proceed pro se.

## CONCLUSION

Because the record shows that Hughes did not knowingly, voluntarily, and intelligently waive his right to counsel prior to his sentencing hearing, we vacate the judgments of the trial court and remand the case for appointment of new counsel and a new sentencing hearing.

_____
CAMILLE R. McMULLEN, JUDGE

-13-