IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs June 20, 2018

**STATE OF TENNESSEE v. RASHUNUS B. PEARSONS**

**Appeal from the Criminal Court for Davidson County**
**No. 2016-B-866      Mark J. Fishburn, Judge**

———————————————————

**No. M2017-01488-CCA-R3-CD**

———————————————————

Defendant, Rashunus B. Pearsons,[1] was indicted for two counts of aggravated assault and two counts of harassment. Defendant was uncooperative with his appointed attorneys, and the trial court allowed Defendant to represent himself at trial. After a jury trial, Defendant was found guilty of all counts. On appeal, Defendant argues that his right to a speedy trial was violated, that the trial court erred by granting the State's motion in limine to exclude mention of the victim's immigration status, that the evidence was insufficient to support his conviction for aggravated assault, and that the trial court deprived him of his right to counsel. After a thorough review of the record, we conclude that proper procedure was not followed to secure a waiver of the right to counsel from Defendant and that Defendant did not forfeit his right to counsel. Therefore, we reverse the judgments of the trial court and remand this case for a new trial.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Criminal Court Reversed**
**and Remanded**

TIMOTHY L. EASTER, J., delivered the opinion of the court, in which D. KELLY THOMAS, JR., and ROBERT L. HOLLOWAY, JR., JJ., joined.

Joseph L. Morrissey, Jr. (on appeal), Nashville, Tennessee, for the appellant, Rashunus B. Pearsons.

Herbert H. Slatery III, Attorney General and Reporter; Alexander C. Vey, Assistant Attorney General; Glenn R. Funk, District Attorney General; and Mindy Morris, Assistant District Attorney General, for the appellee, State of Tennessee.

---

[1] Defendant's last name is spelled variously as "Pearsons" and "Pearson" throughout the technical record. The policy of this Court is to use the spelling as set out in the indictment.

# OPINION

## *Factual and Procedural Background*

On August 15, 2014, a Davidson County Grand Jury indicted Defendant for one count of aggravated assault by "intentionally or knowingly" causing bodily injury to Christina Murdie, the victim, by strangulation and two counts of harassment. *See* T.C.A. §§ 39-13-102; 39-17-308. At his arraignment on the indictment, the trial court found Defendant to be indigent and appointed Defendant's first attorney. A few months later, Defendant's first attorney filed a motion to withdraw as counsel. In his motion, Defendant's first attorney gave a laundry list of reasons for withdrawal including: Defendant was "hostile" and "uncooperative"; Defendant refused to take his advice about writing letters to the trial court and the district attorney's office; Defendant made "unreasonable and inappropriate demands" regarding the strategy of the defense; Defendant refused to engage trial counsel during jail visits; Defendant indicated his distaste and distrust of his attorney; Defendant threatened a lawsuit and a complaint with the Board of Professional Responsibility against his attorney; and Defendant's relationship with his first attorney "deteriorated to the point where he no longer f[elt] he c[ould] effectively represent" Defendant. After a hearing, the trial court relieved Defendant's first attorney and appointed Defendant's second attorney. Subsequently, the first trial judge recused himself and transferred the case to a second trial judge.

Over one year later, the trial court ordered a mental evaluation of Defendant to determine his fitness to stand trial.[2] However, the outpatient mental evaluation facility notified the trial court that Defendant refused to be evaluated and insisted "that the judge could not order the evaluation against his will." So, after approximately three months, the trial court ordered an inpatient mental evaluation at the Middle Tennessee Mental Health Institute. In the month between the order for an inpatient mental evaluation and the production of the report finding Defendant fit to stand trial, the State sought and procured a superseding indictment. The superseding indictment charged the same three counts as the original indictment and added a count alleging aggravated assault by intentionally or knowingly causing the victim to "reasonably fear imminent bodily injury and did attempt or intend to cause bodily injury" to the victim by strangulation. *See* T.C.A. § 39-13-102.

Less than one month after Defendant was declared competent to stand trial, Defendant appeared before the trial court for arraignment on the superseding indictment. During that proceeding, the following exchange occurred:

---

[2] A copy of this order does not appear in the record on appeal, but a letter from the Vanderbilt University Forensic Evaluation Team indicates that they received a court order for the evaluation on February 10, 2016.

[Defendant]: Sir, [trial court], I would like to know, I been incarcerated 27 months, I was indicted in 2014, and I been filing motions on my behalf to help my case and I had been telling [second attorney] that I was already charged with the wrong charge, and when I filed the motion and took the time to go to the law library and see that 39-13-102 was the wrong TCA Code to go with my charge, and I filed a motion on 39-11-106 to show that this was the wrong charge that I was charged with. I haven't seen [second attorney] since March the 10th, and today he telling me I'm being re-indicted for another charge after 27 months.

THE COURT: It's the same case, it's just that they've got a new indictment against you, I guess correcting whatever you said the mistakes were, I don't know.

. . . .

[Defendant]: So after 27 months, they can re-indict?

. . . .

[Assistant District Attorney]: Your Honor, I'd point out, part of the 27-month delay is because [Defendant] I think has going through three or four prior appointed attorneys, [Defendant's second attorney] might remember – number four, this is a case originally in Division II.[3] And another part is that [the first trial judge] eventually had to recuse himself from this case, but I know we've gone through at least four separate attorneys already.

[Defendant]: Excuse me, Your Honor, he was on – he got on my case December 17th 2014 and he's done nothing. I asked him for a trial date back - -

THE COURT: You can represent yourself, you can hire your own lawyer or you can keep [Defendant's second attorney], which of the three do you want to choose?

[Defendant]: I represent myself.

---

[3] The appellate record reveals that only two attorneys had represented Defendant before the arraignment on the superseding indictment.

THE COURT: All right.

Defendant was then arraigned and pleaded not guilty. The trial court's minutes for the arraignment states, "the defendant will procede [sic] pro se." An August 18, 2016 minute entry states "the defendant in person, being represented by counsel," but inconsistently says "pro se, attorney for defendant." The only other item pertaining to Defendant's decision to proceed pro se contained in the appellate record is the trial court's September 1, 2016 order notifying Defendant of his trial date, which says, "The above-listed defendant has chosen to represent himself in this matter." The transcript of the trial indicates that Defendant made statements, questioned witnesses, and argued objections at trial. Additionally, each judgment form indicates Defendant was pro se. However, it appears from the record that elbow counsel was appointed to assist Defendant at trial.[4]

Prior to trial, the State filed a one sentence motion in limine moving the trial court to instruct Defendant "not to mention, discuss or ask questions about the victim's . . . citizenship or immigration status." No written order on this motion is contained in the record, but the trial court minutes indicate that the motion was granted after a hearing.

Trial began September 19, 2016, and Defendant continued to represent himself. Only the State presented witnesses, and the following narrative is derived from their testimony.

Defendant and the victim were dating and living together. On one particular evening when the victim picked up an extra shift at work, Defendant accused the victim of cheating on him and told the victim that she needed "to be home when he is home." After a few attempts by Defendant to stop the victim from leaving, the victim was able to exit the Stay Lodge hotel building and head toward work. As she was walking, the victim noticed Defendant following her. At that point, Defendant told the victim that she should walk closer so he could push her in the road for a car to hit her. In the parking lot of a Wendy's, Defendant grabbed the victim by the neck, pushed her against a wall, and choked her. The victim "couldn't breathe," and Defendant's chokehold left marks on the victim's neck. Defendant choked the victim for approximately thirty to forty seconds before a car came through the drive-through. At that point, the victim broke free and ran inside a Kentucky Fried Chicken. As soon as the victim entered the first set of doors, Defendant grabbed the victim by her hair and "slammed" her on the ground. Defendant kicked the victim and beat her with his fists. Deiya Allen, a Kentucky Fried Chicken employee, witnessed the fighting. During the beating, Defendant told the victim, "I beat

---

[4] Trial court minute entries from September 15, 2016, September 19, 2016, and September 20, 2016, list elbow counsel as the attorney for Defendant. Elbow counsel also signed Defendant's waiver of his right to have a fine in excess of $50 imposed by a jury and Defendant's waiver of his right to testify at trial. Likewise, elbow counsel filed an initial motion for new trial on Defendant's behalf.

your a** and I'm going to kill you." After Defendant ceased his attack, he fled. As a result of Defendant's attack, the victim suffered two black eyes, burst blood vessels in her eyes, a broken nose, and wounds that required stitches around her mouth. Pictures of the victim's wounds were shown to the jury.

Two individuals at the scene called 9-1-1, and recordings of the calls were played for the jury. Ms. Allen went to the entryway of the restaurant and found the victim lying on the floor. Blood was "everywhere." An ambulance and patrol officers came to the scene. Officer Kyle Whitfield of the Metropolitan Nashville Police Department spoke with the victim, and she said that Defendant had attacked her. Officer Whitfield recalled the victim having blood on her face, redness on her neck, and "bloodshot in one of her eyes." The ambulance took the victim to a hospital where she was questioned by Detective John Timm. Once the victim was released from the hospital, she stayed at a friend's house. The next day, Detective Timm followed up with the victim, and she played him voicemail messages from Defendant. In the first message, Defendant stated, "You're illegal in this State. I'm gonna call them immigration folks on your a**, b***h. . . . So, I can get your a** deported." Similar statements about calling "immigration," which contained the same language, were made in other voicemail messages that were played for the jury. The voicemails also contained multiple threats to the victim's life, such as "I'm going to kill you."

Defendant and the victim reconciled a few months after Defendant's attack on the victim. The reconciled relationship was brief, and the victim eventually left Defendant. Unchanged, Defendant resumed his practice of leaving threatening voicemails laden with expletives. In the month of March, Defendant called the victim between 120 and 130 times per day. These calls resulted in more voicemails and more threats to "kill" the victim. Defendant's excessive and incessant phone calls eventually led to the victim moving to a different state. The victim revealed that she had constantly feared for her life from March of 2014 to the day of trial.

During the testimony of the victim, Defendant objected to the references to the victim's immigration status that were in the voicemail recordings. The trial court noted that those references should not have been played for the jury and asked if Defendant wanted to ask questions about the victim's immigration status. Defendant responded, "Yes." When the trial court pried for more information about the questions that Defendant wanted to ask, Defendant began attempting to make some connection between the victim's immigration status and her aiding and abetting him in the crimes which were the subject of the trial. Eventually, the trial court told Defendant that he could ask questions about the subject but he could not use legal terms, such as "aid and abet." Defendant never inquired about the victim's immigration status during cross-

examination. However, Defendant did ask Detective Timm if he knew that the victim was an illegal immigrant.

After deliberation, the jury convicted Defendant of both counts of aggravated assault and both counts of harassment. At the sentencing hearing, the trial court merged the convictions for aggravated assault. The trial court imposed a sentence of eight years for the merged aggravated assault conviction resulting from Counts One and Four and an eleven month and twenty-nine day sentence for each of his two harassment convictions, which were consecutive to one another and consecutive to sentence for the aggravated assault conviction. Following a denial of his motion for new trial and the appointment of appellate counsel, Defendant filed this timely appeal.

*Analysis*

*I. Speedy Trial*

Defendant argues that his right to a speedy trial was violated when the State sought and procured a superseding indictment.[5] The State responds that the superseding indictment did not violate Defendant's right to a speedy trial because he was a cause of the delay, he failed to assert the right, and no prejudice resulted. We agree with the State.

"Both the Sixth Amendment to the United States Constitution and Article [I], Section 9 of the Tennessee Constitution guarantee an accused the right to a speedy trial." *State v. Hudgins*, 188 S.W.3d 663, 667 (Tenn. Crim. App. 2005). Defendants also have a statutory right to a "speedy trial" under Tennessee Code Annotated section 40-14-101. *See id.* Additional protection for a defendant's right to a speedy trial is found in Tennessee Rule of Criminal Procedure 48(b), which allows a trial court to dismiss an indictment if there is an "unnecessary delay" in bringing the defendant to trial. *Hudgins*, 188 S.W.3d at 667. "These guarantees were designed 'to protect the accused against oppressive pre-trial incarceration, the anxiety and concern due to unresolved criminal charges, and the risk that evidence will be lost or memories diminished.'" *Id.* (quoting *State v. Utley*, 956 S.W.2d 489, 492 (Tenn. 1997)).

---

[5] Defendant's brief contains a heading that states, "The Court erred in allowing the State to supersede case number 2014-C-2147 after more than twenty-seven months of confinement thereby violating the Defendant's due process rights." However, all of Defendant's argument and citations to authorities pertain to the right to a speedy trial. Thus, any claim that Defendant's right to due process was violated by the procurement of a superseding indictment is waived. *See* Tenn. R. Ct. Crim. App. 10(b) (stating "Issues which are not supported by argument, citation to authorities, or appropriate reference to the record will be treated as waived in this court.").

The clock for the right to a speedy trial begins running upon the arrest of the defendant or upon a formal accusation by the grand jury. *Id.* We apply the balancing test found in *Barker v. Wingo*, 407 U.S. 514 (1972) to determine if the right to a speedy trial has been violated. *State v. Wood*, 924 S.W.2d 342, 346 (Tenn. 1996). The *Barker* balancing test requires the following factors to be considered: (1) the length of the delay; (2) the reasons for the delay; (3) the defendant's assertion of the right to a speedy trial; and (4) the prejudice resulting from the delay. *Barker*, 407 U.S. at 530-31. If a defendant's right to a speedy trial has been violated, then the conviction must be reversed and the charges dismissed. *State v. Bishop*, 493 S.W.2d 81, 83 (Tenn. 1973). This Court uses an abuse of discretion standard when reviewing the trial court's determination of whether the right to a speedy trial has been violated. *Hudgins*, 188 S.W.3d at 667.

When looking at the first *Barker* factor, we note that a one year delay or longer triggers an inquiry into a speedy trial violation. *Id.* The State concedes that it took "over two years" for the case against Defendant to go to trial. This factor weighs in favor of violation.

The next *Barker* factor, reason for the delay, usually falls into one of these categories: "(1) intentional delay to gain a tactical advantage over the defense or delay designed to harass the defendant; (2) bureaucratic indifference or negligence; (3) delay necessary to the fair and effective prosecution of the case; and (4) delay caused, or acquiesced in, by the defense." *Wood*, 924 S.W.2d at 346-47 (footnotes omitted). Repeated requests for continuances or repeated instances of failure to cooperate with one's attorney fall within the fourth category. *See id.* at 347 n.12; *State v. Anthony D. Forster*, No. M2002-0008-CCA-R3-CD, 2011 WL 1431980, at *7 (Tenn. Crim. App. Apr. 12, 2011), *perm. app. denied* (Tenn. Aug. 14, 2011). A delay which falls within the fourth category is weighed against the defendant. *Wood*, 924 S.W.2d at 347. We view the multiple continuances necessitated by Defendant's failure to cooperate with his attorneys and with the court-ordered mental evaluation to be delays caused by Defendant. Additionally, the first trial judge's recusal and the court's ordering a competency evaluation of Defendant were delays necessary to the fair and effective prosecution of the case. Defendant presents this issue as though the State's superseding indictment is what caused the delay in the trial, but from our review of the record, we conclude that Defendant cannot escape the larger share of the blame for any delay. This factor weighs against violation.

The third *Barker* factor weighs heavily against Defendant because he concedes that he did not assert his right to a speedy trial. "Failure to assert the right [makes] it difficult for a defendant to prove that he was denied a speedy trial." *Barker*, 407 U.S. at 532. This factor weighs against violation.

The final *Barker* factor, prejudice to the defendant, is the most important. *Hudgins*, 188 S.W.3d at 668. However, Defendant presents no argument pertaining to undue and oppressive incarceration, anxiety or concern about the pending charges, or risk that evidence would be lost or memories would fade. Instead, he argues that the superseding indictment "did nothing more than apply more weight" to his charges. However, the issuance of a superseding indictment does constitute prejudice to the defendant for the purposes of this factor. *See Anthony D. Forster*, 2011 WL 1431980, at *7; *State v. Gary Lee Miller*, No. M1998-00788-CCA-R3-CD, 2000 WL 246452, at *8 (Tenn. Crim. App. Mar. 6, 2000), *no perm. app. filed.* This factor weighs against violation.

After considering all of the *Barker* factors, we conclude that Defendant's right to a speedy trial was not violated and that the trial court did not abuse its discretion when it allowed this case to proceed to trial. Defendant is not entitled to relief.

## *II. The Victim's Immigration Status*

Defendant argues that he was denied a full and fair cross-examination of the victim because the trial court granted the State's motion in limine excluding any mention of the victim's immigration status. The State contends that the victim's immigration status was irrelevant and that the trial court acted within its discretion when it excluded the evidence. We agree with the State.

"[C]ross-examination is a fundamental right." *State v. Dishman*, 915 S.W.2d 458, 463 (Tenn. Crim. App. 1995). However, that right is subject to the trial court's discretion over the "propriety, scope, manner, and control of cross-examination." *State v. Echols*, 382 S.W.3d 266, 285 (Tenn. 2012). The trial court only abuses its discretion when it unreasonably restricts a defendant's right to cross-examine a witness against him. *Id.*

Only relevant evidence is admissible. Tenn. R. Evid. 402. Evidence is relevant when it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable that it would be without the evidence." Tenn. R. Evid. 401. Relevant evidence, however, may be excluded if "its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by consideration of undue delay, waste of time, or needless presentation of cumulative evidence." Tenn. R. Evid. 403. Even if it is relevant, "[e]vidence of a person's character or trait of character is not admissible for the purpose of proving action and conformity therewith." Tenn. R. Evid. 404(a). Some exceptions to Rule 404(a) can be found in Rules 608 and 609. Tenn. R. Evid. 404(a)(3). Rule 608(b) allows inquiry about specific instances of conduct that are probative of the witness's truthfulness or untruthfulness on cross-examination. Tenn. R. Evid. 608(b).

Rule 609 allows inquiry about and extrinsic evidence of a prior conviction to be offered into evidence under certain conditions. Tenn. R. Evid. 609. We will not interfere with the trial court's exercise of discretion over the admissibility of evidence absent an abuse of discretion. *State v. Franklin*, 308 S.W.3d 799, 809 (Tenn. 2010). "An abuse of discretion occurs when the trial court applies an incorrect legal standard or reaches a conclusion that is 'illogical or unreasonable and causes an injustice to the party complaining." *State v. Lewis*, 235 S.W.3d 136, 141 (Tenn. 2007) (quoting *State v. Ruiz*, 204 S.W.3d 772, 778 (Tenn. 2006)).

In this case, we are presented with minimal information about the trial court's ruling on the State's one sentence motion in limine to exclude any mention of the victim's citizenship or immigration status. The record contains only the trial court minutes that reveal a hearing was conducted and that the trial court granted the State's motion. With that information and the transcript of what transpired at trial, we conclude that the trial court properly granted the State's motion in limine. *See State v. James Lynn Hale*, No. 86-109-III, 1987 WL 6731, at *1 (Tenn. Crim. App. Feb. 19, 1987), *no perm. app. filed*. The victim's immigration status is not relevant. It makes no "fact that is of consequence" more or less probable, and it is not probative of the witness's truthfulness or untruthfulness. Whether the victim is here illegally or legally, her immigration status has no bearing on whether Defendant attacked her and has no effect on her incentive to tell the truth or lie about the attack. We are puzzled by Defendant's alleged connection between the victim's immigration status and his theory that the victim aided and abetted him in his brutal attack on her. Because the victim's immigration status was not relevant, the trial court did not unreasonably restrict Defendant's right to cross-examination by ruling that it was inadmissible and granting the State's motion in limine.

Even though the trial court properly granted the State's motion in limine, the State played the voicemail recordings where Defendant mentions the victim's immigration status. During a bench conference, Defendant asserted that the State had opened the door to inquiry about the victim's immigration status on cross-examination. "Opening the door" is an equitable principle that "permits a party to respond to an act of another party by introducing otherwise inadmissible evidence." Neil P. Cohen, Sarah Y. Sheppeard & Donald F. Paine, Tennessee Law of Evidence, § 4.01[4][c] (6th ed. Supp. 2017). The trial court told Defendant that he could ask questions about the situation without using legal terms regarding his aiding and abetting theory. During his cross-examination, Defendant never broached the subject. Defendant had the opportunity to cross-examine the victim about her immigration status, even if it was inadmissible before the trial court found that the State opened the door, and he failed to ask questions about it. We are not required to grant relief to "a party responsible for an error or who failed to take whatever action was reasonably available to prevent or nullify the harmful effect of an error." Tenn. R. App. P. 36(a). "It has long been settled in Tennessee that a party cannot take

advantage of errors which he himself committed or invited, or induced the trial court to commit, or which were the natural consequence of his own neglect or misconduct." *State v. Garland*, 617 S.W. 2d 176, 186 (Tenn. Crim. App. 1981). Because Defendant failed to ask questions on the subject during cross-examination when given the opportunity, it cannot be said that the trial court improperly restricted his right to cross-examination. Defendant is not entitled to relief on this issue.

### III. Sufficiency of the Evidence

The entirety of Defendant's argument on the sufficiency of the evidence, outside of his restatement of the law, is this one sentence: "The defendant submits, however, that in the instant case, a rational juror could not have found him guilty of aggravated assault by strangulation based upon the proof submitted at trial in both counts of aggravated assault."[6] The State argues that a rational juror could have found Defendant guilty based upon the testimony of the victim. We agree with the State.

Well-settled principles guide this Court's review when a defendant challenges the sufficiency of the evidence. A guilty verdict removes the presumption of innocence and replaces it with a presumption of guilt. *State v. Evans*, 838 S.W.2d 185, 191 (Tenn. 1992). The burden is then shifted to the defendant on appeal to demonstrate why the evidence is insufficient to support the conviction. *State v. Tuggle*, 639 S.W.2d 913, 914 (Tenn. 1982). The relevant question the reviewing court must answer is whether any rational trier of fact could have found the accused guilty of every element of the offense beyond a reasonable doubt. *See* Tenn. R. App. P. 13(e); *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). On appeal, "the State is entitled to the strongest legitimate view of the evidence and to all reasonable and legitimate inferences that may be drawn therefrom." *State v. Elkins*, 102 S.W.3d 578, 581 (Tenn. 2003). As such, this Court is precluded from re-weighing or reconsidering the evidence when evaluating the convicting proof. *State v. Morgan*, 929 S.W.2d 380, 383 (Tenn. Crim. App. 1996); *State v. Matthews*, 805 S.W.2d 776, 779 (Tenn. Crim. App. 1990). Moreover, we may not substitute our own "inferences for those drawn by the trier of fact from circumstantial evidence." *Matthews*, 805 S.W.2d at 779. Further, questions concerning the credibility of the witnesses and the weight and value to be given to evidence, as well as all factual issues raised by such evidence, are resolved by the trier of fact and not the appellate courts. *State v. Pruett*, 788 S.W.2d 559, 561 (Tenn. 1990). "The standard of review 'is the same whether the conviction is based upon direct or circumstantial evidence.'" *Dorantes*, 331 S.W.3d at 379 (quoting *State v. Hanson*, 279 S.W.3d 265, 275 (Tenn. 2009)).

---

[6] Defendant's brief contains nothing with regard to the sufficiency of Defendant's convictions for harassment.

A person commits aggravated assault when he or she intentionally or knowingly commits an assault and that assault involved strangulation or attempted strangulation. T.C.A. § 39-13-102(a)(1)(A)(iv). As applicable to this case, an assault occurs when a person intentionally or knowingly causes bodily injury to another or when a person intentionally or knowingly causes another to reasonably fear imminent bodily injury. T.C.A. § 39-13-101(a)(1)-(2).

Here, the evidence is more than sufficient to support Defendant's conviction for aggravated assault by strangulation. The victim testified that Defendant grabbed her by the neck, pushed her against a wall, and choked her so that she could not breathe. The victim's account of the events was corroborated by the marks on the victim's neck, which were depicted in the pictures shown to the jury, and by Officer Whitfield's recollection of seeing red marks on the victim's neck at the crime scene. A reasonable juror could find that Defendant intentionally or knowingly strangled the victim causing bodily injury and that Defendant intentionally or knowingly strangled the victim causing the victim to reasonably fear imminent bodily injury. The evidence is sufficient to support both theories of aggravated assault that the trial court merged into one conviction for sentencing purposes. Defendant is not entitled to relief on this ground.

## IV. Right to Counsel

Defendant argues that he was deprived of his constitutional right to counsel. The State responds that Defendant implicitly waived his right to counsel. We agree with Defendant.

The Sixth Amendment to the United States Constitution and article I, section 9 of the Tennessee Constitution guarantee the accused a right to counsel. *Lovin v. State*, 286 S.W.3d 275, 284 (Tenn. 2009). The accused also has a right to self-representation. *State v. Northington*, 667 S.W.2d 57, 60 (Tenn. 1984). The right to counsel and the right to self-representation are two sides of the same coin, and because the rights are alternative in nature, a defendant cannot assert both rights simultaneously. *Lovin*, 286 S.W.3d at 284. If a defendant is wrongfully deprived of the right to counsel, reversal is required. *State v. Holmes*, 302 S.W.3d 831, 838 (Tenn. 2010). Whether a defendant has waived the right to counsel or asserted the right to self-representation is a mixed question of law and fact, which we review de novo with a presumption that the trial court's findings of fact are correct. *State v. Hester*, 324 S.W.3d 1, 29-30 (Tenn. 2010).

Initially, we observe that there are three ways the right to counsel may be discharged: express waiver, implicit waiver, and forfeiture. The facts of this case necessitate a review of each of the three.

*A. Express Waiver*

For a defendant to exercise his or her right to self-representation, "(1) the defendant's request to proceed pro se must be timely; (2) the assertion of the right of self-representation must be clear and unequivocal; and (3) the assertion of the right of self-representation must reflect a knowing and intelligent waiver of the right to counsel." *State v. James Richardson Reece*, No. M2011-01556-CCA-R3-CD, 2013 WL 1089097, at *15 (Tenn. Crim. App. Mar. 14, 2013) (citing *Hester*, 324 S.W.3d at 30-31), *perm. app. denied* (Tenn. June 17, 2013). Tennessee Rule of Criminal Procedure 44 requires trial courts to "advise the accused in open court of the right to the aid of counsel at every stage of the proceedings" and "determine whether there has been a competent and intelligent waiver of such right by inquiring into the background, experience, and conduct of the accused, and other appropriate matters." The rule further instructs trial courts that the waiver of counsel "shall" be in writing and included in the record. Tenn. R. Crim. App. 44(b)(2)-(3).

There were multiple parts of this procedure that were either overlooked by the trial court or are not included in the limited record on appeal. First, the record on appeal does not reflect that the trial court properly advised Defendant in open court that he was entitled to the assistance of counsel at every stage of the proceedings. While it is possible that either the first or second trial judge advised Defendant of his right to counsel at some point, such is not included in any of the transcripts before this Court.

At the point that Defendant expressed his intention to proceed pro se, the trial court merely stated, "You can represent yourself, you can hire your own lawyer[,] or you can keep [Defendant's second attorney], which of the three do you want to choose?" Such a limited, inquisitive statement is not enough to meet the requirement that the trial court advise a defendant about the right to counsel at each stage of the proceedings. Therefore, the record does not establish that the trial court complied with this mandatory requirement.

Second, we cannot hold that the trial court made a determination of whether Defendant's waiver was knowing and intelligent. Our supreme court gave trial courts the following guidance to follow when determining if a defendant may proceed pro se:

> [A] judge must investigate as long and as thoroughly as the circumstances of the case before him demand. The fact that an accused may tell him that he is informed of his right to counsel and desires to waive this right does not automatically end the judge's responsibility. To be valid such waiver must be made with an apprehension of the nature of the charges, the statutory offenses included within them, the range of allowable

punishments thereunder, possible defenses to the charges and circumstances in mitigation thereof, and all other facts essential to a broad understanding of the whole matter. A judge can make certain that an accused's professed waiver of counsel is understandingly and wisely made only from a penetrating and comprehensive examination of all the circumstances under which such a plea is tendered.

*Northington*, 667 S.W.2d at 60 (quoting *Von Moltke v. Gillies*, 332 U.S. 708, 723-24 (1948)). Based upon the transcript of the July 6, 2016 arraignment and the transcript of Defendant's trial, we cannot conclude that any investigation was undertaken by the trial court.

Third, the record does not contain a written waiver by Defendant as explicitly required by Tennessee Rule of Criminal Procedure 44(b)(2). Regardless of whether the trial court believes a defendant would sign the written waiver, the trial court is obligated to obtain a written waiver or discover the reasons for a defendant's refusal to provide a written waiver. *See State v. Parsons*, 437 S.W.3d 457, 481 (Tenn. Crim. App. 2011). In addition to the lack of a written waiver in the appellate record, there is no indication in the record that Defendant was offered a written waiver to sign or refused to sign a written waiver when offered. Again, the trial court failed to comply with this mandatory requirement.

Even though Defendant stated in open court, "I represent myself," we have no choice but to hold that such a statement is not a valid express waiver of the right to counsel when the trial court fails to comply with three separate mandatory requirements of the procedural process for determining if a defendant may proceed pro se.

### *B. Implicit Waiver*

Just because a defendant has not expressly waived the right to counsel, does not mean that a defendant has not lost his or her right to counsel through implicit waiver or forfeiture. *James Richardson Reece*, 2013 WL 1089097, at *18. "The right to counsel is not a license to abuse the dignity of the court or to frustrate orderly proceedings. . . . [T]he right to counsel can be implicitly waived or forfeited if a defendant manipulates, abuses, or utilizes the right to delay or disrupt a trial." *State v. Carruthers*, 35 S.W. 3d 516, 546-47 (Tenn. 2000). "[A]n implicit waiver is presumed from the defendant's conduct *after* he has been made aware that his continued misbehavior will result in the dangers and disadvantages of proceeding pro se." *Holmes*, 302 S.W.3d at 840. The warning of the impending consequences and an opportunity to avoid the extreme sanction of the loss of the right to counsel is *essential* to implicit waiver. *James Richardson Reece*, 2013 WL 1089097, at *18. However, there is no need for "extensive and

detailed" warnings as a prerequisite for implicit waiver; a general explanation of the risks to proceeding pro se will suffice. *Carruthers*, 35 S.W.3d at 549.

If a trial court fails to warn a defendant about his or her misconduct and the consequences of his or her misbehavior, then no implicit waiver will result from the defendant's conduct. *See Holmes*, 302 S.W.3d at 841; *James Richardson Reece*, 2013 WL 1089097, at *18. Again, the record before us contains no warning given to Defendant by the trial court. The trial court also gave Defendant the option to keep his appointed attorney or to hire a private attorney. Because Defendant was presented with those options in addition to the option to act pro se, it is clear that the trial court was not presenting Defendant with an ultimatum regarding Defendant's behavior that would result in the loss of the right to counsel. Likewise, there is no indication that Defendant was aware that the continuation of his behavior would result in the trial court denying him an attorney at trial, nor was Defendant made aware of the risks associated with proceeding pro se. Without this essential element of implicit waiver, we cannot hold that Defendant's conduct resulted in an implicit waiver of counsel.

## C. Forfeiture

The only remaining way that Defendant could have lost his right to counsel is through forfeiture. "The distinction between forfeiture and implicit waiver is that an implicit waiver is made when the defendant's misconduct continues after a warning from the court that such misconduct will result in the loss of the right to counsel, whereas 'forfeiture results regardless of the defendant's intent to relinquish the right and irrespective of the defendant's knowledge of the right.'" *James Richardson Reece*, 2013 WL 1089097, at *18 (quoting *Carruthers*, 35 S.W. 3d at 549). No previous warnings or advisements are required before a trial court can find that a defendant forfeits the right to counsel by engaging in "extremely serious misconduct." *Id*. Using the right to counsel to toy with trial courts by manipulating, delaying, or disrupting trial may result in forfeiture of the right. *Id.* Generally, *only after an evidentiary hearing*, may a trial court determine that conduct justifies a ruling of forfeiture.[7] *Holmes*, 302 S.W.3d at 838-39. Factors relevant to a trial court's determination regarding forfeiture include "(1) whether the defendant has had more than one appointed counsel; (2) the stage of the proceedings, with forfeiture 'rarely . . . applied to deny a defendant representation during trial'; (3) violence or threats of violence against appointed counsel; and (4) measures short of forfeiture have been or will be unavailing." *Id.* at 839 (quoting *Commonwealth v. Means*, 907 N.E.2d 646, 659-61 (Mass. 2009)). "[A] criminal defendant's constitutional right to the assistance of counsel is so fundamental, particularly at trial, that only the most

---

[7] The only exception to this rule is if the defendant's conduct occurs in open court. *See Holmes*, 302 S.W.3d at 839, n.6.

egregious misbehavior will support a forfeiture of that right . . . ." *Id.* at 846. "The State bears the burden of establishing that the defendant committed such actions as to justify a forfeiture." *Id.* at 839.

Two of this Court's cases are illustrative for the purposes of determining if a forfeiture of the right to counsel has occurred. In *State v. Parsons*, this Court held that the defendant had not expressly waived his right to counsel but had forfeited the right because the record showed that the defendant engaged in "egregious behavior" and that he "deliberately engaged" in conduct meant to delay, disrupt, or disorder the administration of justice. *Parsons*, 437 S.W.3d at 482. The defendant in *Parsons* went through two different attorneys. *Id.* at 465-66. Both times that the defendant filed a motion for the removal of his attorney, the trial court held a hearing on the motion. *Id.* at 468. The trial court relieved the defendant's first attorney, but denied the motion for removal regarding the defendant's second attorney. *Id.* The defendant continued to not cooperate with his second attorney and jumped back and forth between asserting his right to counsel and his right to self-representation. *Id.* at 465-77. The trial court ordered two different mental evaluations of the defendant based upon his interactions with counsel. *Id.* at 470-72. At one point, the defendant claimed that his second attorney attacked him outside the courthouse, and he filed a complaint with the local police. *Id.* at 470. The defendant filed complaints with the Board of Professional Responsibility with regard to the representation that he received from both of his attorneys and filed a civil lawsuit against both of his attorneys and the trial court. *Id.* at 470-76. At a hearing on multiple motions, the defendant complained about his counsel, claimed that he was a "sovereign citizen," and asked for another continuance. *Id.* at 473. The trial court directly questioned the defendant and asked about his legal knowledge, experience with legal matters, and his knowledge of the charges that he faced. *Id.* at 474. After that, the trial court allowed the defendant to proceed with his second attorney as elbow counsel. *Id.* at 475. The trial court filed a written order on the motions made at the hearing. *Id.* Even on the day of trial, the defendant protested that he did not want to waive his right to self-representation, maintained that he wanted different counsel, and sought a continuance. *Id.* at 477. Ultimately, the trial proceeded with the defendant's second attorney acting as elbow counsel. *Id.* In its order on the defendant's motion for new trial, the trial court found that the defendant made unwarranted complaints, attacked counsel to manipulate continuances, attempted to manipulate the judicial process, used delaying tactics to postpone trial, and filed four civil suits against people involved in the case. *Id.* at 482, n.15. Additionally, the trial court explicitly held that the defendant was "egregiously manipulative and abusive of the judicial process." *Id.*

In *State v. James Richardson Reece*, this Court held that the defendant did not waive or forfeit his right to counsel because the trial court did not follow the proper procedure for either express or implicit waiver and failed to make any findings regarding

the defendant's behavior to support forfeiture. *James Richardson Reece*, 2013 WL 1089097, at *20. The defendant went through four different attorneys. *Id.* at *1-4. When they moved to withdraw, the defendant's attorneys said that the defendant was "uncooperative," that the attorney-client relationship had "broken down," that the defendant insisted on pursuing "collateral" and "imprudent" actions, that the defendant and counsel had "reached an impasse," and that the defendant "does not acknowledge me as his attorney." *Id.* When the defendant's fourth attorney moved to withdraw for a second time, the trial court held a hearing. *Id.* at *3. At the hearing, the defendant claimed that he was being held "hostage" and asserted to his right to self-representation. *Id.* The trial court commented, "I think today is probably the most unequivocal statement of wanting to proceed pro se that has yet been made by this gentleman," and allowed the defendant's fourth attorney to withdraw. *Id.* at *4. On the day of trial, the defendant claimed that he wanted to hire a private attorney, but the trial court found that the defendant had said at the aforementioned hearing that he wanted to proceed pro se and began the trial. *Id.* This Court found *James Richardson Reece* to be distinguishable from *Parsons* because the trial court held no evidentiary hearing and, "[e]ven more significantly," made no finding that the defendant had intentionally manipulated the justice system and forfeited his right to counsel due to his conduct. *Id.* at *19.

The factual scenario in this case is similar to both *Parsons* and *James Richardson Reece*, but the shortcomings in this case's record mirror the fatal shortcomings which occurred in *James Richardson Reece*. Other than Defendant's statement "I represent myself," the only indication that the trial court considered Defendant's decision to proceed pro se is an order that says, "The above-listed defendant has chosen to represent himself in this matter." The record before us contains no evidentiary hearing on the issue of whether Defendant's behavior was such that he forfeited the right to counsel. Consequently, there is no consideration of the factors relevant to forfeiture in the record. Also, the record contains no finding by the trial court on whether Defendant had intentionally manipulated the justice system and forfeited his right to counsel due to his conduct. Without showing that those things occurred, the State has failed to meet its burden of proving that Defendant forfeited his right to counsel.

It is not news to this Court that criminal defendants can often be belligerent, uncooperative, and frustratingly stubborn. Trial courts must protect the integrity of the judicial process, as the trial court attempted to do here. However, in so doing, trial courts must also safeguard the constitutional rights of defendants by complying with the procedures set forth by the Tennessee Rules of Criminal Procedure and the applicable United States and Tennessee case law. Because the proper procedure was not followed to secure a valid waiver of the right to counsel or to establish a forfeiture of the right to counsel, we must conclude that Defendant's right to counsel was violated.

*Conclusion*

Although the evidence is sufficient to support the finding of guilt beyond a reasonable doubt, we conclude that Defendant was denied his right to counsel, reverse the judgment of the trial court, and remand for a new trial.


_____

TIMOTHY L. EASTER, JUDGE